## THE EMPORIA NATIONAL BANK v. THE BOARD OF COMMISSIONERS OF LYON COUNTY.

MOTION AND DEMURRER, *Overruled; Practice in Supreme Court.* Where the defendant moves the court to strike out certain portions of the plaintiff's petition, and to require the plaintiff to make his petition more definite and certain in certain particulars, and the court overrules the motion, and the defendant then demurs to the plaintiff's petition on the ground that it does not state facts sufficient to constitute a cause of action, and the court overrules the demurrer, and the defendant then brings the case to the supreme court for review, *held,* that the supreme court will not consider the ruling of the court below upon the motion any further than is necessary to see how far such ruling was involved in or might have affected the ruling of the court below upon the demurrer; and if such ruling upon the motion did not in any manner affect the ruling of the court below upon the demurrer, or if a rightful ruling upon the motion would not have required a different ruling upon the demurrer from that in fact made by the court below, then no reversal of the order of the court below overruling the demurrer can be ordered by the supreme court, where no reason for such a reversal exists except that the court below may have erred in its ruling upon the motion.

*Error from Lyon District Court.*

ACTION brought by the *Board of Commissioners of Lyon County* against the *Emporia National Bank* and others, to recover certain damages.

The amended petition alleges, in substance, that—

During the year 1878, the defendants, D. S. Gilmore, I. A. Taylor and L. A. Wood, were the county commissioners of the county of Lyon, in the state of Kansas, and were acting as such during that year; that during said year the county aforesaid was the owner and holder of certain railroad stock of the Atchison, Topeka & Santa Fé railroad company, to the amount of $200,000; that during said year the defendants, D. S. Gilmore, I. A. Taylor, L. A. Wood, P. B. Plumb, Calvin Hood, and the Emporia National Bank, entered into an arrangement, understanding and conspiracy among themselves and with divers persons to this plaintiff unknown, to sell and convert said stock and then appropriate a portion of the money which should be received for the sale and conversion thereof, to their own use, and to defraud the plaintiff of the same, and to purchase with a portion of the money arising from the sale and conversion of said stock, certain of the bonds which had been executed by the plaintiff and were then outstanding and unpaid, upon such terms and in such a manner and then turn over a portion of the bonds so purchased to the plaintiff, at such figures and price therefor as would enable the defendants to realize for themselves profits on the bonds so to be bought and turned over to the plaintiff, which said profits so to be realized were to be by the defendants withheld from the plaintiff and to be by them appropriated to their own use; and to further so manage and conduct the business of selling and converting said railroad stock and purchasing said bonds with the proceeds of the sale of the stock as to realize for themselves certain accumulating interest on the bonds aforesaid; that in pursuance of the agreement, understanding and conspiracy entered into as aforesaid, and for the purpose of carrying the same into execution, and with the intent to cheat and defraud the plaintiff out of a large sum of money and property, the defendants, on or about the 13th day of July, 1878, took possession, actual control and custody of the certificates of said stock, which had been by the Atchison, Topeka & Santa Fé railroad company issued and delivered to the plaintiff; that the amount of such railroad stock and the certificates therefor so obtained by the defendants is in the aggregate two hundred thousand dollars; that after the defendants had obtained possession of the stock and certificates aforesaid, they, in pursuance of the agreement, understanding and con-

spiracy aforesaid, and for the purpose of compassing the ends thereof, and to enable them to cheat and defraud the plaintiff of its money and property, sold, assigned and transferred the said railroad stock and the certificates issued therefor, and received for the sale, assignment and transfer thereof the sum of two hundred thousand dollars, and that they then and afterward stated, represented and reported that they had received only the sum of one hundred and sixteen thousand four hundred and thirty-one dollars and eighty-eight cents, and no more, as and for the whole sum realized from the sale and transfer of the said stock and the certificates issued therefor; that in pursuance of said agreement, understanding and conspiracy, and to cheat and defraud the plaintiff of its money and property, the defendants then took, withheld and appropriated to their own use the sum of eighty-three thousand five hundred and sixty-eight dollars and twelve cents, that being a part of the money realized from the sale and transfer of the two hundred thousand dollars of the plaintiff in the Atchison, Topeka & Santa Fé railroad company, and being money belonging to this plaintiff.

The plaintiff says that at the time the defendants sold the plaintiff's stock in the Atchison, Topeka & Santa Fé railroad company, it was worth one hundred cents in cash on every dollar thereof, and was at that time, in the city of New York and in the city of Boston, bringing in the market one hundred cents on the dollar; and that then the plaintiff's $200,000 of stock in the Atchison, Topeka & Santa Fé railroad company was worth the sum of $200,000.

The plaintiff says that in pursuance of said agreement, understanding and conspiracy, and for the purpose of accomplishing the ends thereof, and in order to cheat and defraud the plaintiff of its money and property, the defendants, with a portion of the money realized from the sale and transfer of the plaintiff's two hundred thousand dollars of stock in the Atchison, Topeka & Santa Fé railroad company, purchased certain outstanding bonds which had been executed by the plaintiff, and pretended that they paid for each dollar thereof so purchased the sum and price of seventy-eight cents for each dollar thereof, together with the accrued interest thereon, and returned to the plaintiff of the bonds the aggregate sum of one hundred and fifty-one thousand dollars, and no more. The plaintiff says that it is not true that the defendants paid for the bonds purchased by them the sum and price of seventy-

eight cents for each dollar thereof, but, instead of so doing, that they paid the sum and price of only sixty cents, with the accrued interest thereon to date of purchase, for each dollar thereof; and that in pursuance of said agreement, understanding and conspiracy, and for the purpose of cheating and defrauding the plaintiff of its money and property, they withheld from the plaintiff, and appropriated to their own use, the difference between the actual price and cost of said bonds, to wit, sixty cents and accrued interest to the date of purchase for each dollar thereof, and the reported price and cost thereof, to wit, seventy-eight cents and accrued interest to date of purchase for each dollar thereof, which said difference so taken, withheld and appropriated by them aggregated upon all the bonds purchased and returned the sum of twenty-seven thousand one hundred and eighty dollars, which said sum was the money of the plaintiff.

The plaintiff says that at the time the defendants purchased the bonds aforesaid the price thereof was sixty cents and accrued interest for each dollar thereof, and no more, and that they could then be purchased and were then purchased in the market for the price of sixty cents and accrued interest for each dollar thereof.

The plaintiff says that the defendants, in order to accomplish the purposes of said conspiracy and to cheat and defraud the plaintiff, employed certain persons, firms and banks in the cities of New York and Boston, and elsewhere, to obtain for them the said bonds at a price as low as they could be obtained; that said persons, firms and banks obtained for the defendants a large amount of the bonds at the price of sixty cents and accrued interest, which said bonds were paid for with the funds of the plaintiff, and were obtained and delivered as directed by the defendants; that a portion of said bonds so obtained was afterward by the defendants turned over to the plaintiff, at the price of seventy-eight cents as aforesaid; that the persons, firms and banks so employed by the defendants to obtain bonds for them, and who did obtain the same for them, are the following named, to wit: George William Ballou & Company of New York and Boston, Donnell, Lawson & Company of New York, the Central National Bank of New York, A. W. Beasley & Company of New York, Robert H. Weems, George H. Holt, and others now unknown to the plaintiff.

The plaintiff further says that in pursuance of said agree-

ment, understanding and conspiracy, and with the purpose of further cheating and defrauding the plaintiff, the defendants, after having sold the plaintiff's said railroad stock and obtained the money therefor, invested a portion of the money so obtained in said bonds, which were then bearing interest at the rate of seven per cent. per annum, and that after having so purchased the said bonds with the money of plaintiff, they held the same for the period of four months, and allowed the interest to accumulate thereon during said period, and then withheld and collected from the plaintiff the amount of interest which had accumulated upon the bonds during the said four months, and appropriated the same to their own use; and that the amount of such interest is the sum of ten thousand five hundred and seventy dollars.

The plaintiff says that during the time of the committing of the wrongs herein complained of, the said P. B. Plumb was the president of the said Emporia National Bank, and Calvin Hood the vice president thereof, and that as such officers they were duly authorized to represent said bank in all transactions; that said bank received and partook of the proceeds of said conspiracy and fraud practiced upon the plaintiff, and took and appropriated to its own use the proceeds of said conspiracy and fraud, and that it still retains the fruits thereof.

The plaintiff says that the said P. B. Plumb and the said Calvin Hood were, during the time of the commission of the wrongs complained of herein, general partners in business, and that during the time aforesaid the said P. B. Plumb was the duly-appointed agent of the plaintiff, authorized and empowered to sell, assign and transfer the plaintiff's stock in the Atchison, Topeka & Santa Fé railroad company for its real value, and to purchase with the funds arising from such sale the outstanding and unpaid bonds of the plaintiff as cheaply as the same could be procured; that in pursuance of said appointment and authority, the said P. B. Plumb entered upon the execution of the trust, and while in the execution of said trust committed with the other defendants the wrongs and frauds herein complained of, to the great damage of the plaintiff.

The plaintiff says that all of the said several sums of money, so as aforesaid collected, taken, withheld and appropriated by the defendants to their own use, was the money and property of this plaintiff, and was so as aforesaid wrong-

fully and fraudulently taken, collected and withheld by them from the plaintiff, and that they retain and withhold said several sums of money from the plaintiff and neglect and refuse to pay the same to the plaintiff.

The plaintiff says that there is due to the plaintiff from the defendants interest upon said moneys so collected, retained, withheld and appropriated by the defendants to their own use, at the rate of seven per cent. per annum since the 10th day of August, 1878; and that, by reason of the wrongful, unlawful and fraudulent acts and conduct of the defendants, in taking, collecting and withholding said several sums of money as aforesaid, and appropriating the same as aforesaid, there is due to the plaintiff from the defendants, and from each of them, the sum of one hundred and thirty-one thousand three hundred and eighteen dollars and twelve cents, [$121,318.12,] with interest thereon since the 10th day of August, 1878, at the rate of seven per cent. per annum.

Wherefore the plaintiff prays judgment, etc.

The defendant *Bank* moved the court to strike out certain portions of this petition, and to require the plaintiff to make its petition definite and certain in certain particulars. At the March Term, 1880, the court overruled this motion, and defendant excepted. The defendant then demurred to the petition on the ground that it does not state facts sufficient to constitute a cause of action against it. The court overruled the demurrer, the *Bank* excepting, and bringing the case here.

*C. N. Sterry,* for plaintiff in error.

*T. N. Sedgwick,* county attorney, *Scott & Lynn,* and *James D. Snoddy,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was originally commenced in the district court of Lyon county, in the name of the board of county commissioners of such county against the Emporia National Bank and others, for damages alleged to have been sustained by the plaintiff through certain alleged conspiracies and wrongs on the part of the defendants in connection with certain railroad stock owned by the county, and certain county

bonds issued by the county. The defendant bank moved the court to strike out certain portions of the plaintiff's petition, and to require the plaintiff to make its petition more definite and certain in certain particulars, which motion the court overruled, and the defendant excepted. The same defendant then demurred to the plaintiff's petition on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled, and the defendant again excepted. And the defendant, the bank, now, as plaintiff in error, brings the case to this court for review.

We think it is wholly unnecessary to discuss the facts of this case, as they are alleged in the plaintiff's petition. The petition was sufficiently definite for all practical purposes, and the matter objected to in the petition was generally not objectionable, *if true;* and the small portion which might possibly be objectionable, could not reasonably prejudice the substantial rights of the objecting defendant. It will be noticed that only the Emporia National Bank objected to the petition. The other defendants seemed willing to contest the truth of the allegations of the petition, without interposing any motion or demurrer. Besides, we cannot consider the ruling of the court below upon the motion any further than is necessary to see how far such ruling was involved in or might have affected the ruling of the court below upon the demurrer. A petition in error does not lie from the overruling of such a motion. A petition in error, however, does lie from the overruling of the demurrer, and if the ruling of the court upon the motion in any manner affected or should have affected the ruling on the demurrer, then we may consider the ruling on the motion; but otherwise, not. Now we do not think that the ruling on the motion did or should have affected the ruling on the demurrer in any respect. A cause of action was stated beyond all doubt and beyond all question in the petition. And striking out all from the petition that might reasonably have been stricken out, still a good cause of action would remain stated in the petition. Also, whatever election the plaintiff might have made as to the

measure of its damages, (and such election is really what the latter portion of the defendant's motion asked for,) still the petition would state a good cause of action. But we cannot say that the court below erred in refusing to require this election. Indeed, we think the ruling of the court below upon the entire motion was right, except possibly the court might have ordered some portions of the petition to be stricken out. But with these portions stricken out, the petition would be good, and the demurrer should of course have been overruled. Supposing that the ruling of the court below upon the motion was slightly erroneous, still a rightful ruling thereon would not have required a different ruling upon the demurrer from that which was in fact made by the court below. Hence the ruling upon the demurrer was right in whatever manner we may view the case.

The decision of the court below will therefore be affirmed.

All the Justices concurring.