SMITH, Respondent, vs. CITY OF BURLINGTON and others, Appellants.

*September 13—October 9, 1906.*

*Municipal corporations: Acquiring steam or water power for lighting plants, etc.: Vote of electors: Construction of statutes: Constitutional law: Classification of cities: Injunction: Extent.*

1. Sec. 1, ch. 95, Laws of 1901, in terms grants to cities of the fourth class power to purchase, lease, or construct steam power or water power for the purpose of maintaining and operating lighting plants and waterworks. Sec. 2 provides that the power

granted in sec. 1 shall be exercised only when ratified by a two-thirds vote at a special election. Construing said act in the light of other legislation on the general subject, it is *held* that, even if the power in terms granted by sec. 1 existed under prior statutes, it is subject to the condition imposed by sec. 2.

2. The exercise of the power mentioned is equally subject to said condition whether the attempt be to acquire the steam or water power as a separate undertaking or as incidental to or a part of a general plan for construction of a lighting plant or waterworks.

3. Where the words of a statute are plain and unambiguous and not absurd, courts must be guided thereby, and not by extrinsic facts and circumstances, in ascertaining the legislative intention.

4. A statute not applicable to larger cities, but requiring in cities of the fourth class the approval of the electors by a two-thirds vote for acquiring steam or water power for light or water supply, does not involve an improper classification of cities on a basis not germane to the subject of the act.

5. An injunctional order restraining a city of the fourth class from entering into any contract or issuing any bonds for the construction of an electric lighting plant pursuant to proceedings set forth in the complaint, which proceedings involved the acquisition of steam or water power for such plant in violation of ch. 95, Laws of 1901, is *held* not so broad as to bar the commencement of new proceedings for the establishment of a lighting system which did not include the acquisition of steam or water power.

APPEAL from an order of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Action brought by a taxpayer to enjoin the city and its officers from entering into a contract for the construction of an electric lighting plant pursuant to proceedings theretofore had and from issuing or negotiating bonds therefor and from collecting taxes pursuant to an ordinance to meet such bonds. It appears on the pleadings that the defendant city is a city of the fourth class, existing under ch. 40a, Stats. 1898; that in May, 1895, the council adopted certain plans and specifications for an electric lighting plant for lighting the streets of said city, which included the erection and construction of a steam power plant to operate the same as a part of the en-

tire plan. Thereupon, by ordinance, provision was made for the issue and sale of $12,000 of city bonds for the purpose of constructing such electric lighting works; such issue of bonds to be made only after a special election to approve the same. A special election was held upon the single question of issuing bonds, and a bare majority of the votes cast were in favor thereof, much less than two thirds. Thereupon an ordinance was enacted levying taxes to meet the principal and interest of the bonds, namely, $2,200 for the year 1906, and substantially equal instalments for each of the succeeding years to 1911. The mayor and city clerk were directed to advertise for bids for said bonds, and also for bids for constructing the electric light plant in accordance with said plans and specifications, and they intended and threatened to proceed so to do.

Upon complaint and answer showing substantially the foregoing facts, preliminary injunctional order was made enjoining the defendants to "desist and refrain from awarding or entering into any contract for the purchase of material or machinery, or for the erection and construction of an electric lighting plant in the city of *Burlington* pursuant to the proceedings heretofore had therefor, as set out in the complaint; and from awarding, issuing, or negotiating the corporate bonds of said city of *Burlington* for the purpose of paying for, erecting, or constructing such electric lighting plant;" also from entering upon the tax roll or collecting any assessment or tax for the principal or interest of such bonds. After due hearing upon notice of motion to vacate or modify such restraining order, such latter motion was denied, from which order of denial the defendants bring this appeal.

For the appellants there was a brief by *E. John Wehmhoff*, attorney, and *Jones & Schubring*, of counsel, and oral argument by *Mr. Wehmhoff* and *Mr. E. J. B. Schubring*.

For the respondent there was a brief by *Waller & Giltings*, attorneys, and *John B. Simmons*, of counsel, and oral argument by *Mr. Simmons*.

DODGE, J. This case presents another of the labyrinthian complications which the various legislative acts have thrown around the subject of the establishment of municipal waterworks and lighting plants and the incurring of municipal indebtedness therefor, many of which were so impressively set forth in *Appleton W. W. Co. v. Appleton,* 116 Wis. 363, 93 N. W. 262. The statute now presented was not mentioned or considered in that case. It is ch. 95, Laws of 1901, and provides, by sec. 1, that every city of the fourth class "is hereby authorized and empowered to purchase, lease or construct steam power or water power for the purposes of maintaining and operating for public use lighting plants and waterworks." Sec. 2 provides that the authority and power granted in sec. 1 shall be exercised only when ratified by a two-thirds vote at a special election, with proviso that no such exercise of the power shall require the expenditure of a sum greater than three per cent. of the taxable property in any one year. It is urged by the appellants that under various existing provisions of statute cities of the fourth class had, prior to this act, full power and authority to erect and establish lighting plants, and, as an incident and element thereof, to purchase, lease, or construct either the steam or water power necessary to operate the same, and that no such power or authority was granted or conferred by the act of 1901, from which they argue that the restrictions imposed by sec. 2 of that act, applying only, as they do, to the power and authority granted by the first section, have no application to a power formerly existing and not so granted. This argument is not unlike one that was made and refuted in the *Appleton Case.* It is by no means an unusual form for statutes to, in terms, make a grant of power which already exists, and then to impose restrictions or regulations upon the exercise of that power, meaning no more by the apparent grant than to define the power upon which it is proposed to impose such restrictions and regulations; the latter constituting the whole pur-

pose of the act, and the first section, in terms a grant, being only adopted as a convenient method of definition of that to which the second section should apply. After examination of this act in the light of the various other legislation on the general subject, we are convinced that such was the purpose of ch. 95, Laws of 1901, and that, whether or not the first section did confer any new power, the second section imposed a condition of a two-thirds vote upon the exercise of the power to lease, purchase, or construct steam or water power for the purposes of maintaining and operating lighting plants or waterworks.

But here, again, the appellant urges that, in the light of existing powers and of some facts in the history of this enactment, this law should be read as only placing limitations upon an attempt by a city to acquire steam or water power as separate undertaking distinct from a general proceeding to construct a system of municipal lighting or waterworks; pointing out the probability that there were cities in the state already owning such plants but dependent for their operation upon power owned by others, or cities which desired to avail themselves of an opportunity to acquire such power before they were prepared to enter upon the construction or acquisition of a system of lighting or waterworks, and as anticipatory thereto. It may be that some such limited purpose was in the minds of the legislators; but, where words are plain and not absurd, courts must be guided thereby, and not by extrinsic facts and circumstances, in ascertaining the legislative intention. In the statute before us there is nothing of ambiguity in the declaration that ratification by a two-thirds popular vote must be had as a condition of the exercise by the city of the power to purchase, lease, or construct steam or water power, and there is no word to suggest an exception in case such power is attempted to be acquired as incidental to or a part of a general plan for construction of lighting or water works. We deem ourselves bound to give

effect to these plain words without searching for some legislative purpose other than they express, and to hold that the action of the defendant city in this case, in proceeding to let contracts and issue bonds for the construction and acquisition of steam power to run a lighting plant, was forbidden by law, although such contract also included the construction of the lighting system.

Appellant argues that, as we construe the act of 1901, it is unconstitutional, because involving a classification of cities according to population, which, as argued, presents no distinction germane to the legislation. The general propriety of the classification of municipalities according to population for the purpose of conferring different powers and imposing different restrictions has been asserted so many times and so uniformly by this court that we need but refer to some of our prior decisions: *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482; *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270; *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954; *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071. Nevertheless, each new piece of legislation involving this classification presents again the question of relationship between its subject and the distinction between the larger and denser community and the smaller one; not whether such distinction renders the variance in legislation wise, but whether any reasonable mind can conceive relationship between them. The effect of the statute attacked is to require popular approval for acquiring steam or water power for light or water supply more completely in the small city than in the large one. Much legislation, from the earliest days, has assumed the legitimacy of such distinction. Many steps involving the making of public improvements and consequent incurring of pecuniary burdens are required to receive the sanction of the electors in towns, but not in cities. Many things may be done by the supervisors of towns containing

unincorporated villages of 1,000 population, which in other towns must be voted at the town meeting. So, throughout the statutes regulating cities, we find different limitations according to the classes as to the powers of the government in the field of public improvements and the necessity of approval by the electors. We think very obvious relationship may be discovered between the size of a city and the propriety of burdening it with the cost of acquiring and maintaining so expensive plants as for light and water with power plants sufficient to operate them. Such plants are of much more doubtful necessity and prosperity to the small city than to the large. They involve much more of speculation and experiment. Expenses of operation, especially of competent superintendence, are likely to be proportionately greater. These and other considerations suggest the propriety of submitting the questions directly to those who must ultimately bear the burden of any mistake or failure. Again, as suggested by respondent's counsel, the comparative ease of submission of a question to a small electorate, and the greater attention ordinarily paid to municipal affairs, might well have been considered a legitimate reason for confining such a law to the smaller cities. We are not able to assert that the legislature could not have found reasons appealing to it as cogent for requiring a two-thirds popular vote in cities of the fourth class not equally necessary in larger cities, and therefore cannot declare beyond reasonable doubt that this enactment transcends the legislative power.

Some contention is made that the injunctional order is too sweeping and restrains the city from doing acts in the way of establishment of a system of poles, wires, and electric lights, independently of the acquisition or construction of steam or water power therefor; for which action it is contended no two-thirds popular vote is required. The temporary injunction merely restrains the city from entering into any contract for material or construction of an electric

lighting plant "pursuant to the proceedings heretofore had" as set forth in the complaint, and from issuing or negotiating bonds for the construction of said electric lighting plant "pursuant to the proceedings had therefor as set out in the complaint," and from collecting any taxes for the purpose of paying the interest or principal of such bonds. It appears, without dispute, from the proceedings, that the only plan upon which the council has acted or the public voted is a single complete plan including the construction of a steam power plant, and the only resolution for the issue of bonds is to supply money for that entire purpose, and it is obvious that the present injunctional order does not go beyond prevention of steps injurious to the plaintiff as a taxpayer in pursuance of a definite and declared plan which, as we have already said, is unlawful and beyond the power of the city. If the purpose is forbidden, the raising of money therefor either by taxation or the issue of bonds is illegal. We deem it entirely plain that the present injunctional order could be no bar to commencement of new proceedings for the establishment of a street lighting system which did not include the construction or acquisition of a steam or water power plant.

*By the Court.*—Order appealed from is affirmed.