THE STATE, Respondent, vs. EVANS, Appellant.

*December 8, 1906—January 8, 1907.*

*Constitutional law: Class legislation: Equal protection of the laws: Public policy: Pharmacists: Regulation: Discrimination based on population: Evidence: Relevancy: Materiality.*

1. In determining the constitutionality of class legislation based on population it must be borne in mind (1) that there are distinctions between large and dense communities and small and sparser ones as separate classes, and such differences are general and relevant to some purposes of legislation; (2) that merely the distinctions between individuals of one class and of the other are not to be considered; (3) that the line of demarcation may be arbitrary.

2. By the enactment of ch. 56a, Stats. 1898, regulating the practice of pharmacy and drawing a line between communities over and under 500 population for application of the prohibition against independent practice by assistant pharmacists, the legislature did not transgress its legitimate field of discretion over public policy, and the statute is constitutional.

3. Ch. 56a, Stats. 1898, while originally enacted in 1882, was prospective in contemplation, prohibited the various acts according to conditions as they might exist at the time of their commission, and hence is not open to the construction that it is based on circumstances existing at the time of the act, and prohibits and punishes the practice of pharmacy by other than a registered pharmacist in communities which in 1882 had 500 population or more, while permitting practice by assistant pharmacists in all places which at the same date had less than 500 population.

4. Ch. 56a, Stats. 1898, is not void simply because it fails to provide a method of ascertaining or proving the population and leaves that fact to be proved by the ordinary common-law means of evidence instead of prescribing a statutory method.

5. The statute regulating the practice of pharmacy (ch. 56a, Stats. 1898, as amended by ch. 340, Laws of 1901) exempts from the operation of the general law such persons of good moral character as, previous to the enactment of ch. 167, Laws of 1882, had had ten years' experience as pharmacists. *Held* that, even if such exemption was valid (a point not decided), the only result would be that the liability of one not within the exempted class would remain as it was before the amendment.

6. In an action to enforce the penalty denounced by ch. 56a, Stats. 1898, regulating the practice of pharmacy, testimony of a pharmacist as to whether he saw any reason for discriminating between large and small communities is irrelevant.

7. In an action against a physician who maintained a pharmacy in a village of more than 500 population, he not being or having in his employ a registered pharmacist, to enforce the penalty denounced by ch. 56a, Stats. 1898, a question was asked a witness whether "it would interfere with defendant's practice as a physician if his prescriptions could not be put up at his own store." The statute provides, among other things, that it shall not "interfere with any practicing physician from dispensing his own medicines or supplying his patients with such articles as may seem to him proper." *Held*, that the question was immaterial.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed*.

Action for penalties for keeping a drug and pharmacy store in a village of more than 500 population, defendant not being, and not having in his employ, a registered pharmacist, as required by sec. 1409g, Stats. 1898, as amended, and for, at the same time, permitting the retailing, compounding, and dispensing of drugs by a person, to wit, defendant's son, not a registered pharmacist and not under the charge of a registered pharmacist. The defendant and appellant, since 1884, has been a duly licensed and practicing physician located at Mt. Horeb, Dane county, Wisconsin, and had been engaged

in the pharmacy business continuously since 1888. It was stipulated that he was not a registered pharmacist and did not have in his employ a registered pharmacist, but that he and also his son, C. Milo Evans, who took charge of the store during his absence, are and were assistant registered pharmacists; that the latter was permitted to compound and dispense drugs, medicines, and poisons and did so at the time charged in the complaint without the supervision or charge of a registered pharmacist. Opinion evidence was offered and excluded to the effect that there was no more reason for requiring a registered pharmacist in charge of a drug store in cities or villages containing more than 500 population than in those which contained less. The defendant's office as a practicing physician was in, and in connection with, the drug store, and the latter had been conducted by him, in connection with his practice as a physician, for about twenty years. It was stipulated that the acts complained of did not come within any of the statutory exceptions. The trial was had to the court without a jury, and the defendant found guilty upon both counts of the complaint, and judgment rendered against him for $100 and costs, from which he brings this appeal.

For the appellant there was a brief by *R. M. Bashford* and *O. A. Stolen,* and oral argument by *Mr. Bashford.*

The *Attorney General,* for the respondent.

DODGE, J. The fundamental question raised is the constitutionality of our statutes regulating the practice of pharmacy, ch. 56*a,* Stats. 1898, with its amendments, and especially sec. 1409*g,* imposing penalties. Those acts, summarizing the elements important to this discussion, provide for the licensing of pharmacists and of assistant pharmacists, requiring for each a specified but different age and experience, together with diploma or examination by the state board of pharmacists. Sec. 1409*g* prohibits retailing or dispensing of drugs, or the maintenance of any pharmacy therefor, in

any town, city, or village having 500 population or more, except by or under charge of a registered pharmacist, while in towns, cities, or villages of less than 500 population similar acts are prohibited, except by a registered pharmacist or assistant pharmacist, or under his charge. It also imposes a penalty of $50 for each offense. Exception is made in favor of a practicing physician in dispensing his own medicines. No substantial contention is made that the business or profession of pharmacy is not a legitimate field for police regulation by reason of peril to health or lives in the community generally which may result from incompetence therein. This subject is set at rest in this state by *State v. Heinemann,* 80 Wis. 253, 49 N. W. 818. Neither is it contended that the requirements of experience or school education and examination are not reasonably germane to the subject of competency. Neither can there be successful contention that there is in that respect any classification of individuals except on the lines of competency, for every one who becomes a registered pharmacist has the same right as any other in that class to practice anywhere and everywhere in the state, and every one who becomes a registered assistant is also privileged and restricted equally with every one in his class, and those who have not qualified at all are equally restricted from the practice. Indeed, there is no complaint on this subject.

The principal objection to the law is that it classifies localities, allowing some to be served in the business of pharmacy by assistant pharmacists, who, as a class, presumptively have less of competence than is demanded of registered pharmacists, by whom the larger communities are required to be served. It is strenuously urged that here is false classification; that the life and health of every individual and of the public is as important in the little hamlet as in the great city, and that any protection against incompetent dispensers of drugs is as much due to the one as the other; that, the purpose of the act being the promotion of the safety of the com-

munities in obtaining necessary supply of medicines, there
is no distinction between communities over 500 in number
and those less which is in any wise germane to the purposes
of this police regulation of the business.   Doubtless this law,
like all other police laws, presents classification, and we are
confronted, as in the case of every such law, with the duty
to consider the relationship of the distinctions between the
classes to the subject of the legislation.   Of course there
must be such relationship.   A mere arbitrary distinction in
no wise relevant to the subject of legislation will not justify
a departure from that equal protection of the laws com-
manded by the XIVth amendment to the federal constitu-
tion, nor that equality before the law commanded by sec. 1,
art. I, of the Wisconsin constitution.   It is unnecessary, and
probably futile, to attempt again to state those rules as to
classification in legislation which have been phrased so often
to the utmost of the ability of the judges writing the opin-
ions.   The citation of a few illustrative cases will suffice:
*Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *State ex rel.
Kellogg v. Currens,* 111 Wis. 431, 436, 87 N. W. 561; *Black
v. State,* 113 Wis. 205, 219, 89 N. W. 522; *State ex rel.
Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954; *State v.
Whitcom,* 122 Wis. 110, 119, 99 N. W. 468; *Bingham v.
Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071.   That there
are distinctions between large and dense communities and
small and sparser ones as separate classes is, of course, ob-
vious.   That such differences are germane and relevant to
some purposes of legislation has been declared, almost with-
out limit, by courts.   *Smith v. Burlington,* 129 Wis. 336, 109
N. W. 79, and cases there cited.   But, as remarked in that
case, each new exercise of the power of police regulation pre-
sents anew to the courts the question of possible relationship
between the distinguishing characteristics of the classes and
the object and purposes of the regulation.   As to the cogency
or propriety of either the regulations made or of the import-

ance of the distinctions, as we have so often said, the courts have little concern. Those subjects rest with the legislature, and only when the court, in the exercise of the utmost deference toward that other branch of the government, is compelled to say that no one in the exercise of human reason and discretion could honestly reach a conclusion that distinctions exist having any relation to the purpose and policy of the legislation, can it delay its validity. *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 439, 87 N. W. 561; *Black v. State, supra; State ex rel. Risch v. Trustees, supra; Smith v. Burlington, supra.*

In approaching this question it must be continually borne in mind that we are not to consider merely the distinctions between individuals of the one class and of the other. It is a favorite argument of counsel in all these cases to make such comparison, and it is not surprising that we find it pointed out in this case that a town with a population less than 500 situated close to a populous city presents all the reasons for requiring any pharmacy maintained therein to be of as high quality in management as could be demanded within the city itself. The question to be considered, however, is the distinction between the classes as classes, whether there are characteristics which, in a greater degree, persist through the one class than in the other which justify legal discrimination between them. *State ex rel. Kellogg v. Currens, supra; State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501. Neither need we be disturbed by the fact that the line of demarcation between the classes is arbitrary. Wherever there is a sliding scale of age, population, dimension, distance, or other characteristic which is believed to justify classification, necessarily the division between classes must be arbitrary, and legislation is not to be declared void which adopts the age of twenty-one as marking the right to vote or manage property because the individual at twenty years and eleven months may be as competent as at twenty-

State v. Evans, 130 Wis. 381.

one, nor, in a law distinguishing by population, because no appreciable difference can be conceived between the town of 999 and the town of 1,000, provided, generally, the class of those under twenty-one years of age are less competent to vote or manage property than the class of mankind above that age, or the class of towns which do not include villages of 1,000 population are generally less in need of the governmental powers conferred upon villages than the class of towns which do contain villages of 1,000 and upward.

In the light of these general suggestions we turn to the concrete inquiry whether any reason may fairly be thought to exist why the larger communities through the state should receive, as a class, protection against the perils of incompetent pharmacists, some of which are dispensed with in the case of the petty communities of less than 500 population each, also viewed as a class. Of course one must concede appellant's assertion that the life and health of each individual should be as sacred to the government as that of any other, in the absence of legitimate distinctions between them, and that the mere fact of residence in immediate contact with thousands of his neighbors by no means universally distinguishes one from another who lives in a smaller or more sparsely settled community. Yet the statutes are full of laws which do recognize that protection may be had in the one class which is not possible or politic in the other. No country town not containing a village of 1,000 population has authority to maintain a police force to protect its citizens against violence or burglary, and still there are many reasons why the isolated citizen is much more in need thereof than one surrounded by many neighbors. Distinction is also made with reference to protection against fire; protection of the health of communities by public provision of pure water or public construction of sewers; to which illustrations probably many more might be added. They suffice to show that, in the ordinary course of governmental policy, mass of population has been deemed to

have relation to some of the protections which government does extend to the lives, health, and property of the citizens. Can such discrimination be deemed wise by the legislature? Probably no act, not strictly *malum in se,* which can be performed by any individual or class of individuals, is either unmixed benefit or unmixed injury to the public welfare or convenience; hence the restraint of any act by law, even though it may tend to prevent some injuries or perils, also causes some others by preventing benefits which might result from the doing of the forbidden acts. It is essentially the legislative function to weigh in comparison these countervailing advantages and disadvantages in deciding whether good policy requires the imposition of the restraint. If it be found that conditions resulting from natural laws divide the people or the territory of the whole state into classes such that in one the advantages will preponderate, while in the latter class the injuries will, then classes do exist, naturally, which the legislature may and should recognize, and may legitimately enact the restraint as to one class and omit or relax it as to the other. It is not only desirable that the drugs be dispensed to the public by skilful and competent persons to avert peril from occasional mistakes, but it is far more desirable, nay, practically essential, that medicines be within prompt and easy reach by the public. The danger to life or health to be expected from occasional error of an incompetent salesman is hardly comparable to the injuries likely to result from exclusion of whole communities from opportunity to obtain the ordinary remedies often essential momentarily to save lives. It is, therefore, within the field of legislative discretion to provide only such restrictions as to competence of the dispenser as will not unduly prevent dealing in medicines. We are fully persuaded that legislators, within the bounds of reason, might have believed that this result could be obtained in the large communities consistently with requiring the competence, age, and experience prescribed for registered

pharmacists, but that, in very small or sparse villages and towns, in many cases, the profits would not be sufficient to attract such men, and such communities might be left unprovided; that thus the very forces of nature and human nature had created classes distinguished in respects directly relevant to the subject of protection of life and health by regulating the dispensing of medicines, and therefore proper of recognition and differentiation in framing laws on the subject. If a given restriction which tends to protect lives and health in one class of communities will menace them in another, the very imposition of it generally and without exception might be most obvious and oppressive discrimination. We have already quite clearly intimated our view that a regulation and licensing of plumbers in large cities to exclusion of smaller ones would have been valid but for another discrimination between individuals, though the classification of cities was not expressly considered either in argument or decision. *State ex rel. Winkler v. Benzenberg,* 101 Wis. 172, 76 N. W. 345. We have held constitutional a law regulating pharmacists containing the same classification of towns and villages as the present one, though again it is true that objection was not pressed upon or discussed by the court. *State v. Heinemann,* 80 Wis. 253, 49 N. W. 818. The same considerations above advanced are met in Minnesota by provision that general storekeepers may sell drugs if more than a mile from a pharmacy, and the laws have been fully approved on the grounds above suggested, in face of the argument that life and health are as precious two miles from a drug store as at less distance. *State v. Donaldson,* 41 Minn. 74, 42 N. W. 781. We must conclude, therefore, that in drawing a line between communities over and under 500 population for application of the prohibition against independent practice by assistant pharmacists, the legislature did not transgress its legitimate field of discretion over public policy.

Another consideration urged by the attorney general with

much plausibility is that, in the petty communities, where assistant pharmacists are authorized, stocks are generally likely to be less in volume and intricacy, and pressure of business and haste less to such degree as to largely diminish perils of mistakes even by dispensers of less maturity and experience, but, as we have found other distinctions sufficient to justify the classification, the entire efficacy of this one need not be decided.

Appellant further attacks the classification of localities for the reason, as he contends, that it is based upon circumstances existing at the time of the act, and construes the law as if it prohibited and punished practice of pharmacy by other than a registered pharmacist in any town, city, or village which in 1882 had 500 population or more, while permitting practice by assistant pharmacists in all places which at the same date had less than 500 population. The language of the act is clear beyond need of argument to the contrary, however. Obviously, the statute was prospective in contemplation, and prohibited the various acts according to conditions as they might exist at the time of their commission.

Again, and in this connection, the legislation is assailed because it provides no method of ascertaining or proving the population. Doubtless it would seem wiser to prescribe some specific test of a fact as difficult of proof as is the population of a given territory, as the legislature has done in many of the acts depending upon that fact; but the number of population is a fact capable of being established by evidence, and we certainly should not be justified in holding void an act of the legislature simply because it had left the fact to be proved by ordinary common-law means of evidence instead of prescribing a statutory method.

It is claimed that, by an amendment enacted in 1901 (ch. 340), a classification of individuals was imported into the law which is false, because it excepts from the prohibitions and penalties thereof an entirely artificial class not distinguished

from other citizens by any characteristics germane to their
fitness to practice pharmacy. This class so excepted by that
act is described as "such persons of good moral character as,
previous to the enactment of chapter 167 of the laws of Wis-
consin for 1882, shall have had ten years' experience as
pharmacists," etc. We confess that we have not yet discov-
ered any reason which should except from examination a
class of men who, twenty years ago, had ten years of experi-
ence not followed by subsequent practice. But it is not nec-
essary for us to consider that question. The constitutionality
of such an exception is of no materiality to the appellant's
conviction. The law making it illegal to vend drugs or per-
mit them to be vended by other than registered pharmacists
in towns, cities, or villages of 500 population or over had per-
sisted since 1882 and was in force in 1901 when the legisla-
ture attempted to make an exception in favor of this new
class. If such an exception were beyond the power of the
legislature, the only result would be its own invalidity. The
legislature would merely have failed to establish immunity
for such class, and the law would remain as it was before the
attempt, under which appellant's offense and liability for
penalty are the same as by the law if validly amended in
1901.

Error is assigned on the exclusion of the testimony of one
Williams, a druggist and member of the Wisconsin State
Board of Pharmacy, as to whether he saw any reason for
discriminating between large and small communities. Such
testimony was wholly inadmissible. The exercise of the
power of legislation is by the constitution made dependent
upon reasons which address themselves to the minds of those
whom the people may choose as legislators, not on those which
appeal to some particular druggist or some particular mem-
ber of a state board. The question whether or not there can
be any consideration to appeal to the mind of any reasonably
intelligent person is a judicial one, solution of which is by

State v. Evans, 130 Wis. 381.

the constitution imposed upon the courts of the state. The fact that this particular witness had an opinion one way or the other was wholly irrelevant, and could neither control nor aid the court.

Error is also assigned on the exclusion of the question to appellant's son, whether "it would interfere with his [appellant's] practice as physician if his prescriptions cannot be put up at his own store." In this we think there was no error, for several reasons. In the first place, the provision of law within which counsel was attempting to bring his client is not that the act shall not be so construed as to interfere with the practice of a physician, but "not to interfere with any practicing physician from dispensing his own medicines or supplying his patients with such articles as may seem to him proper." Hence the question whether it might interfere with his "practice" was immaterial; and further, there was no pretense that the law, as construed by the trial court, prevented his prescriptions being put up in his own store. Apart from these considerations, however, it was expressly stipulated that the two acts charged in the complaint did not come within that exception, so of course it was immaterial whether the prohibition of some other acts might do so.

We are unable to say that the legislature exceeded its constitutional powers in any material part of the statute under which appellant has been found guilty, or that any error was committed by the trial court in reaching the judgment appealed from.

*By the Court.*—Judgment affirmed.