[No. 8183. *En Banc.* October 16, 1909.]

A. D. McKNIGHT, *Petitioner*, v. ROBERT T. HODGE, *as Sheriff of King County, Respondent.*[1]

CONSTITUTIONAL LAW — PRIVILEGES OF CITIZENS — PEDDLERS—DISCRIMINATION BETWEEN CLASSES. Laws 1909, p. 736, requiring a county license from peddlers, except peddlers of agricultural and farm products, and books, periodicals and newspapers, does not arbitrarily discriminate between persons in substantially the same situation, but the classification is reasonable and germane to the object and purposes of the legislation and therefore constitutional.

SAME — DISCRIMINATION BETWEEN LOCALITIES — DELEGATION OF POWER. Laws 1909, p. 736, requiring a county license from all peddlers except in cities and towns when their licensing is regulated by such cities or towns, is not an unconstitutional discrimination between classes, since the legislature may delegate, as a revenue measure, the power on the subject to cities and towns, and it is not necessary that the police power be exercised by uniform regulations throughout the state.

SAME—DISCRIMINATION BETWEEN CLASSES. Laws 1909, p. 736, requiring a license fee of $100 from peddlers on foot, $150 and $250 from peddlers with one and two horses, and $300 from peddlers with other conveyances, is not unconstitutional as exacting unequal fees, as the classification is a proper basis for measuring the license fee.

STATUTES — PROVISOS — REPUGNANCY—HAWKERS AND PEDDLERS— LICENSE. The proviso to Laws 1909, p. 737, § 3, that county peddlers' licenses shall expire by limitation on the second Monday in January succeeding the year in which they were issued, is wholly inconsistent with and repugnant to the body of the act requiring the issuance of an annual license authorizing the licensee to do business for the term of one year from the date thereof, and is therefore inoperative and void.

HAWKERS AND PEDDLERS—LICENSE FEE—REASONABLENESS. An annual county license fee of $100 from peddlers on foot, $150 and $250 from peddlers with one and two horses, and $300 from peddlers with other conveyances, is not excessive, where regarded as an exercise of both the police and taxing power.

Application filed in the supreme court July 12, 1909, for a writ of habeas corpus to secure the release of a person held upon a charge of peddling without a license. Writ denied.

[1]Reported in 104 Pac. 504.

*Chas. D. Fullen*, for petitioner.

*George F. Vanderveer* and *Merritt, Oswald & Merritt*, for respondent.

PARKER, J.—This is an application for a writ of habeas corpus. The questions involved have been presented to the court by oral argument and briefs of counsel, upon an order to show cause why the writ should not issue. The petitioner is held in custody by the sheriff of King county, upon a charge of peddling without having a license therefor, in violation of the provisions of Laws of 1909, pp. 736-738, ch. 214. The only ground of illegality urged against the detention of the petitioner is, that the law under which he is charged is in violation of his rights under the state and Federal constitutions. The provisions of the law, so far as involved by the questions presented, are as follows:

"Section 1. The term peddler for the purpose of this act shall be construed to include all persons, both principals and agents, who go from place to place and house to house, carrying for sale, or offering for sale or exposal for sale, goods, wares or merchandise: *Provided,* That nothing in this act shall apply to peddlers in agricultural or farm products: *And provided further,* That nothing in this act shall apply to peddlers within the limits of any city or town which by city ordinance regulates the sale of goods, wares or merchandise by peddlers: *And provided further,* That nothing in this act shall apply to vendors of books, periodicals or newspapers."

Section 2 provides for punishments.

"Sec. 3. Every peddler, whether principal or agent, shall, before commencing business in any county of the state, make application in writing and under oath to the county treasurer for the county in which he proposes to make sales, for a county license. Such application must state the names and residences of the owners or parties in whose interest said business is conducted, and shall state the number of horses and vehicles to be used by him, and at the same time shall file a true statement under oath of the quantity and value of the stock of goods, wares and merchandise that is in the county

for sale or to be kept or exposed for sale in said county, and shall at the same time make special deposit of five hundred dollars with the county treasurer aforesaid, and shall pay the said treasurer the county license fee as follows:

(1)   Peddler on foot, $100.00.
(2)   Peddler with one horse and a wagon, $150.00.
(3)   Peddler with two horses and a wagon, $250.00.
(4)   Peddler with any other conveyance, $300.00.

The county treasurer shall thereupon issue to said applicant a peddler's license, authorizing him to do business in the county aforesaid for the term of one year from the date thereof: *Provided*, That the license issued under and by virtue of this act shall expire by limitation on the second Monday of January succeeding the year of which said license was issued. Every county license shall contain a copy of the application therefor and shall not be transferable, and shall not authorize more than one person to sell goods as a peddler, either by agent or clerk, or in any other way than his own proper person."

Section 4 provides for records and files of licenses.

"Sec. 5. Upon the expiration and return of each county license, the county treasurer shall cancel the same, endorse thereon the cancellation thereof and place the same on file. He shall then hold the special deposit of the licensee thereunder for a period of ninety days from the date of said cancellation, and after satisfying any and all claims made upon the same in the section next following shall return said deposit or such portion of the same, if any, as may remain in his hands, to the licensee.

"Sec. 6. Each deposit made with the county treasurer of any county in this state shall be subject to all taxes legally chargeable to same, to attachment and execution on behalf of the creditors of the licensee whose claims arise in connection with the business done under his county license, and the treasurer may be held to answer as trustee in any civil action in contract or tort brought against any licensee, and shall pay over, under order of the court or upon execution, such amount of money as the licensee may be chargeable with upon the final determination of the case. Such deposit shall also be subject to the payment of any and all fines and penalties incurred by the licensee through violations of the provisions of the pre-

ceding sections, and which shall be a lien upon same and shall be collected in the manner provided by law."

Learned counsel for the petitioner contends that this law is repugnant to § 12 of article I of our state constitution, which provides:

"No law shall be passed granting to any citizen or class of citizens . . . privileges or immunities which, upon the same terms shall not 'equally belong to all citizens;"

and is also repugnant to the fourteenth amendment of the constitution of the United States, which, in substance, secures the same equal rights. It is argued that, since privileges and immunities are by the terms of this law granted to peddlers of agricultural products, · books, periodicals and newspapers, which are withheld from peddlers of other articles, by exacting a license fee from the latter and not from the former, such privileges and immunities are, therefore, not accorded to all upon the same terms. This argument is based upon the assumption that all peddlers are necessarily in the same class, and that the legislature has no power to recognize subclasses within the general class, but must grant privileges or immunities to or withhold them from all peddlers alike.

It may be conceded that the discrimination between the classes must rest upon some reasonable ground of difference, and that such difference must have some relation to the business, and not be a mere difference in the persons placed in the respective classes or subclasses, which is entirely foreign to the business, such as a difference in citizenship. (*Bacon v. Locke,* 42 Wash. 215, 83 Pac. 721; *State v. Montgomery,* 94 Me. 192, 47 Atl. 165, 80 Am. St. 386; *Simrall v. City of Covington,* 90 Ky. 444, 14 S. W. 369, 29 Am. St. 398, 9 L. R. A. 556) ; or a difference by reason of previous military service. *City of Laurens v. Anderson,* 75 S. C. 62, 55 S. E. 136, 117 Am. St. 885; *State v. Garbroski,* 111 Iowa 496, 82 N. W. 959, 82 Am. St. 524, 56 L. R. A. 570; *State v. Shedroi,* 75 Vt. 277, 54 Atl. 1081, 98 Am. St. 825, 63

L. R. A. 179. In all such cases it will be noticed the difference used as a basis for classification has no more relation to the business or proper purpose of the legislation than if it were a distinction based upon a difference in the color of hair or eyes of the persons sought to be put into the different classes.

In the case of *Lasher v. People,* 183 Ill. 226, 231, 55 N. E. 663, 75 Am. St. 103, 47 L. R. A. 802, where commission merchants dealing in certain farm products were required to be licensed, while those dealing in certain other farm products were exempt from the law, the court said:

"It is first argued that the statute is invalid as discriminating between commission merchants, because it excepts those who deal in grain, live stock, and dressed meats. The claim is that produce commission merchants constitute a class, and that the legislature must require a license from all or none. This objection to the law is not valid. The legislatures have power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. The discrimination must rest upon some reasonable ground of difference, but the classification in this case is a natural one. The commission merchants dealing in the kinds of produce named in this act, which constitute the small products of the farm, are of a different class from those who transact business in the great markets for the sale of grain, live stock and dressed meats."

In the case of *State v. Evans,* 130 Wis. 381, 385, 110 N. W. 241, in answering the contention that a law requiring pharmacists to be licensed in towns of five hundred population or more, and not elsewhere in the state, was unconstitutional as class legislation, touching the power of the legislature to define the class upon which the law should operate, the court said:

"Doubtless this law, like all other police laws, presents classification, and we are confronted, as in the case of every such law, with the duty to consider the relationship of the distinctions between the classes to the subject of the legislation. Of course there must be such relationship. A mere arbitrary distinction in no wise relevant to the subject of legislation will not justify a departure from that equal pro-

tection of the laws commanded by the 14th amendment to
the Federal constitution, nor that equality before the law
commanded by section 1, art. 1, of the Wisconsin constitu-
tion. It is unnecessary, and probably futile, to attempt again
to state those rules as to classification in legislation which
have been phrased so often to the utmost of the ability of the
judges writing the opinions. The citation of a few illustra-
tive cases will suffice: *Adams v. Beloit*, 105 Wis. 363, 81 N.
W. 869, 47 L. R. A. 441; *State ex rel. Kellogg v. Currens*,
111 Wis. 431, 436, 87 N. W. 561, 56 L. R. A. 252; *Black v.
State*, 113 Wis. 205, 219, 89 N. W. 522, 90 Am. St. Rep.
853; *State ex rel. Risch v. Trustees*, 121 Wis. 44, 54, 98 N.
W. 954; *State v. Whitcomb*, 122 Wis. 110, 119, 99 N. W.
468; *Bingham v. Milwaukee Co.*, 127 Wis. 344, 106 N. W.
1071. That there are distinctions between large and dense
communities and small and sparser ones as separate classes
is, of course, obvious. That such differences are germane
and relevant to some purposes of legislation has been de-
clared, almost without limit, by courts. *Smith v. Burlington*,
109 N. W. (Wis.) 79, and cases there cited. But, as re-
marked in that case, each new exercise of the power of police
regulation presents anew to the courts the question of pos-
sible relationship between the distinguishing characteristics
of the classes and the object and purposes of the regulation.
As to the cogency or propriety of either the regulations made,
or of the importance of the distinctions, as we have so often
said, the courts have little concern. Those subjects rest with
the legislature, and only when the court, in the exercise of the
utmost deference toward that other branch of the govern-
ment, is compelled to say that no one in the exercise of hu-
man reason and discretion could honestly reach a conclusion
that distinctions exist having any relation to the purpose and
policy of the legislation, can it deny its validity."

The legislature having exempted from the operation of this
law peddlers of agricultural and farm products, and vendors
of books, periodicals, and newspapers, thus placing them in a
different class from other peddlers, we do not think it can be
said that such a classification is wholly without reason, and
foreign to all legitimate purpose of the legislation. Reasons
quite satisfactory to some minds could be advanced for ex-
empting peddlers of farm products from a license law, and

the same can be said of vendors of books, periodicals, and newspapers; while on the other hand, there may be room for argument to the contrary. We refer to reasons and arguments relating to some legitimate purpose of the law. The very fact that there is room for honest difference of opinion in this respect shows that it is a question of policy, and not of power in the legislature to pass the law. We are of the opinion that a license law such as this, whether its object be regulation or revenue, is not a grant of privileges or immunities to a class of citizens which, upon the same terms, do not equally belong to all, because it classifies peddlers with reference to the different kinds of goods they sell. *Stull v. De Mattos*, 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892; *People v. Smith*, 147 Mich. 391, 110 N. W. 1102; *Ex parte Heylman*, 92 Cal. 492, 28 Pac. 675; *Howe Machine Co. v. Cage*, 68 Tenn. 518; *Machine Co. v. Gage*, 100 U. S. 676, 25 L. Ed. 754; *Singer Mfg. Co. v. Wright*, 97 Ga. 114, 25 S. E. 249, 35 L. R. A. 497; *Borough of Warren v. Geer*, 117 Pa. St. 207, 11 Atl. 415.

It is urged that the law discriminates arbitrarily and without reason between peddlers in cities and towns and elsewhere in the state, by exempting the former when their licensing is regulated by ordinance of such cities and towns. Like the other classification we have noticed above, it seems to us this is a question of legislative policy. As a revenue measure the legislature certainly is authorized to delegate the power to cities and towns and suspend the operation of the law there, when such cities and towns act on the subject, and it is not necessary to the preservation of equal rights that the police power of the state should be exercised by uniform regulations all over the state. Classification of the people of different localities with reference to population, or with reference to cities and towns, is within legislative discretion. *State v. Evans, supra*; Gray, Lim. of Taxing Power, § 1424.

The law is also assailed upon the ground of the unequal license fees exacted from peddlers by reason of their different

modes of travel, and conveyance of their goods, in reaching the public. That such a classification for the purpose of measuring the license fee is not an unwarranted basis of discrimination is pointed out by the very pertinent language of the supreme court of Wisconsin, in *Servonitz v. State,* 133 Wis. 231, 240, 113 N. W. 277, 126 Am. St. 955:

"No reason which appeals very strongly to our judgment is advanced why peddlers should not be classified, as in the law in question, according to their facilities for going from place to place and carrying their wares. The perils to be guarded against in respect to the occupation and the contributions that may reasonably be required to the public revenues, strongly suggest, if they do not demand, such classification. Certainly the legislature, within the boundaries of reason, may well have thought that a person traveling about the country plying the vocation of a peddler with an equipment consisting of a span of horses and a wagon should, both as a matter of police regulation and taxation, pay a greater license fee than a person plying the same trade but traveling about from place to place on foot. Not because the former would be more liable to be dishonest than the latter but because of the greater opportunity and liability thereof in the one case than in the other, and the corresponding greater liability in the one case than in the other of the harm, if committed, being difficult of redress or going entirely without remedy; again, not because the person, as such, traveling with a team should be taxed more than one traveling on foot, but, since the one in all reasonable probability would conduct a much greater business than the other, the tax exaction should bear some practical relation thereto."

It is contended that the proviso in the latter part of § 3 of the act renders it unconstitutional, in that it has the effect of making all licenses expire on the second Monday of January in each year, while the fee required is the same in amount where one licensee procures his license at the beginning and another at the end of the year, thus exacting from one a fee proportionately several times more than the other. In view of the fact that this law is evidently intended as a revenue measure as well as for regulation under the police power,

such contention would have some support if the proviso were given effect, and is not void by reason of its repugnancy to the body of the law. After providing for the payment of the license fee, the law reads:

"The county treasurer shall thereupon issue to said applicant a peddler's license, authorizing him to do business in the county aforesaid for the term of one year from the date thereof: *Provided*, That the license issued under and by virtue of this act shall expire by limitation on the second Monday of January succeeding the year of which said license was issued." Laws 1909, p. 737, § 3.

It seems to us that this proviso is so clearly inconsistent with, and repugnant to, the body of the act fixing the annual fee and declaring that the license shall be issued to the applicant, "*authorizing him to do business . . . for the term of one year from the date thereof*," as to render it wholly inoperative, even though there should be no constitutional objections to it. In the case of *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 621, 102 Am. St. 885, 65 L. R. A. 336, this court noticed the distinction made between the effect of a saving clause and a proviso, by some courts which hold that a saving clause repugnant to the enacting part of the law is void, while a proviso repugnant to the enacting portion will control. From the language of the opinion in that case, the court apparently entertained the view, though the decision did not rest upon the exact point, that there was no sound reason for such distinction, but that both would be equally rejected when repugnant to the purview of the act, quoting from 1 Kent's Commentaries, 463, where such view is expressed. The following may also be cited in support of this view: *Cummings v. People*, 211 Ill. 392, 71 N. E. 1031; *Jackson v. Moye*, 33 Ga. 296; *Penick v. High Shoals Mfg. Co.*, 113 Ga. 592, 38 S. E. 973; *Dugan v. Bridge Co.*, 27 Pa. St. 303, 67 Am. Dec. 464; 26 Am. & Eng. Ency. Law (2d ed.), 681. We are of the opinion that, where a proviso is wholly repugnant to the purview of the law, as

it is here, it is inoperative and void.   This results in the license fee being uniform.

There would be some ground for contending that the fee charged for the license is excessive if the law be regarded only as a police regulation; but we see no reason for imputing to the legislature an intention other than to exercise both the police and taxing power in its passage. This view of the law was entertained by Judge Hanford of the Federal court of this district, in *Ex parte Crowder*, 171 Fed. 250, where it was held the law did not violate the equal rights provisions of the state or national constitutions, either in its discrimination between the classes it recognizes, in the excessiveness of the license fee, or in the other conditions imposed.

We are of the opinion that the law does not violate any rights guaranteed by the state or national constitutions, and that petitioner's prayer for the writ should be denied.   It is so ordered.

DUNBAR, CROW, FULLERTON, GOSE, and CHADWICK, JJ., concur.