KILEY, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

*February 22—March 15, 1910.*

(1) *Law of the case: Decision on former appeal.    (2–4) Constitu-*
*tional law: Due process of law: Equal protection of the laws:*
*Classification for legislative purposes: Railway carriers: Liabil-*
*ity for injuries to employees.*

1. A decision on a former appeal that a statute does not violate con-
stitutional provisions is the law of the case.
2. Laws governing railway carriers as a class in their relations with
their employees, and subjecting them to liabilities and obliga-
tions greater than those imposed upon other employers of labor,
are based upon just and proper classification and are not in vio-
lation of the XIVth amendment to the federal constitution.
3. It is not essential to the validity of such laws that their opera-
tion should be confined to employees engaged in moving trains.
4. Exemption of "employees working in shops or offices" from the
operation of a law imposing upon railway carriers peculiar lia-
bilities to all their other employees, is not so unreasonable a
subclassification that it can be held to be beyond the power of
the legislature.

MARSHALL, J., concurs upon the sole ground that the court is
bound by its former decision, from which he dissented.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge.    *Affirmed.*

For the appellant there were briefs by *Greene, Fairchild, North & Parker* and *Chas. E. Vroman,* attorneys, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *Minahan & Minahan,* and oral argument by *V. I. Minahan.*

.WINSLOW, C. J.    This is an action against a railway company brought by one of its employees to recover damages for the loss of his eye, occasioned by the negligent act of his co-employees while they were engaged in constructing a wire fence along the right of way.    A general demurrer to the complaint was overruled, and that ruling affirmed by this court in 138 Wis. 215, 119 N. W. 309, 120 N. W. 756. Since that decision the action has been tried before a jury and a special verdict returned finding that (1) the staple which injured plaintiff's eye was thrown out of the post by reason of the wire being pulled or moved by plaintiff's co-employee, one Charapata; (2) a man of ordinary intelligence and prudence in Charapata's position ought to have reasonably anticipated that, by pulling or moving said wire without notifying plaintiff that he was about to do so, some such injury would result to plaintiff; (3) Charapata was guilty of negligence in so moving or pulling said wire without first notifying the plaintiff that he was about to do so; (4) a man in plaintiff's position should not have reasonably anticipated that a staple might be thrown out and cause him injury by the handling of the wire by the man next to him as the work was ordinarily carried on; (5) plaintiff's damages were $2,000.

The defendant, both by answer and by motion made at the opening of the trial, expressly made the contention that it was not liable, because ch. 254 of the Laws of Wisconsin for 1907, under which the action is brought, violates the XIVth amendment to the constitution of the United States, in that

it deprives the defendant of property without due process of law and denies to the defendant the equal protection of the laws. After the rendition of the verdict the defendant moved for judgment in its favor notwithstanding the verdict, also that the court set aside the affirmative answers to the first four questions of the verdict and substitute negative answers therefor and render judgment for the defendant thereon, all of which motions being denied, judgment for the plaintiff was rendered on the verdict, and the defendant appeals.

As will appear from the foregoing statement, the jury upon trial of the action found exactly the state of facts alleged in the complaint, and the defendant upon this appeal makes no claim of error save the claim that ch. 254 of the Laws of 1907 is void because it violates the provisions of the XIVth amendment to the federal constitution. The same claim was fully argued, considered, and rejected upon the former appeal, and the result is conclusive not only upon the trial court but upon this court. Whether right or not, the conclusion then reached formed the law of this case, and when the same question was again presented the court below could rightly do but one thing, i. e. follow the former decision. Any other holding would have been error. *Ellis v. N. P. R. Co.* 80 Wis. 459, 50 N. W. 397; *Keystone L. Co. v. Kolman,* 103 Wis. 300, 79 N. W. 224. Such being the case, it is obvious that no error can now be predicated upon the action of the trial court. Perhaps we might well affirm the judgment upon the doctrine of *res adjudicata* without further remark; but, inasmuch as another case involving the same question has been submitted at the present assignment, we have re-examined the questions raised and deem it proper to state again our conclusions upon the federal questions involved.

The fundamental question is the question of classification. If the law can only be viewed as a classification of laborers

or employees based upon the peculiar risks which men who operate trains necessarily meet and which are not met by men who are employed by firms or corporations engaged in other occupations, then it may be admitted for the sake of the argument that the classification attempted in this law is indefensible, because in that case it should have been confined to those employees who meet such peculiar risks, namely, those engaged in or about the operation of trains, while the law (with two exceptions to be noticed later) in fact includes all classes of employees, many of whom meet no peculiar risk, but only the same risks which the employees of ordinary business concerns are daily meeting. It is not denied that a number of courts have condemned similar laws upon this very ground, notably the courts of Iowa and Minnesota, and it may be admitted that such was, for a time at least, the prevailing doctrine. It is to be noted that this court in *Ditberner v. C., M. & St. P. R. Co.* 47 Wis. 138, 2 N. W. 69, repudiated this doctrine and upheld a law similar to the present law, in that it covered *all* employees, on the ground that it was a valid exercise of the reserve power given to the legislature to alter or repeal corporate charters. However, this court took a different view of the present statute when this case was here upon demurrer. It viewed the law as a law classifying railway common carriers, regulating their relations with their employees and subjecting them to peculiar obligations and duties towards such employees. The law was sustained on the ground that it was entirely proper, and in fact a universally recognized principle, that railway carriers should be, and generally must be, subjected to special legislation affecting them alone; that this is so, not only on account of the unique dangers involved in the business, but as well on account of its public nature and the vast importance to the public at large of the careful conduct of the business, not merely in the handling of trains, but in the performance of well-nigh every act which an employee performs

which is necessary to the carrying on of the business. Railway carriers from their very nature must, in large measure, be governed by laws peculiar to themselves, and such has been the character of railway legislation since the business began. The question is whether the regulation of their relations with their employees is within this general principle or not.

It was noticed in one of the opinions upon the former appeal that while the federal act which attempted to abolish the co-employee doctrine as to interstate carriers was held void in the *Employers' Liability Cases,* 207 U. S. 463, 28 Sup. Ct. 141, because it covered intrastate commerce, still it was broadly intimated in the opinion that, if the act applied to the District of Columbia and the territories only, it could not be questioned. This act attempted to impose on every common carrier a liability to *any* employee for damages resulting from the negligence of any of its officers, agents, or employees. Thus it will be seen that it applied in terms not merely to employees who are moving trains, but to all employees, and thus seems to be subject to the same objection as to improper classification which is now made to the Wisconsin statute.

Since the former opinion in the present case was rendered, the question of the constitutionality of the federal act as applied to the District of Columbia and the territories has been brought before the United States supreme court in *El Paso & N. E. R. Co. v. Gutierrez,* 215 U. S. 87, 30 Sup. Ct. 21, and the law has been held constitutional. It is true that the point now raised is not discussed in the opinion, but the decision certainly stands as a direct holding that a law making a common carrier liable for injuries to *any* employee resulting from the negligence of a co-employee is a valid law. While the XIVth amendment only inhibits states from depriving persons of life, liberty, or property without due process of law, the same inhibition is placed upon the United

States by the Vth amendment, and both state and national legislatures are governed by the principle that there can be no discrimination in the laws except such as is based upon just and proper classification. Without attempting again to review the authorities which were reviewed upon the former appeal, we are content to rest this branch of the case upon the principle before stated, namely, that railway carriers, on account of the public character of their business, may properly be classified so far as their relations with their employees are concerned, whether such employees are moving trains or not, and may be made subject to liabilities and obligations greater than those imposed upon other employers of labor.

As to the provision exempting shop and office employees from the operations of the act, a different question arises. This is undoubtedly classification, or rather subclassification, of employees. Subclassification of a class is entirely permissible, but, like all other classification, it must be based upon real distinctions germane to the purpose of the law and suggesting at least the propriety of substantial difference in legislation. On the other hand, the question whether there is room or necessity for classification is one resting primarily with the legislature, and no court is justified in declaring classification baseless unless it can say without doubt that no one could reasonably conclude that there is any substantial difference justifying different legislative treatment. *State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Servonitz v. State,* 133 Wis. 231, 113 N. W. 277. Nor is classification to be condemned by the courts because the situation of certain individuals in one class may not differ materially from the situation of certain individuals in another class. Such is frequently the case. It is the class, considered broadly as a class, which must possess the distinguishing differences of situation calling for different legislation, not every individual in the class. *State v. Evans, supra.*

Bearing these well-established rules in mind, we still find

ourselves unable to say that the classification which exempts shop and office employees from the provisions of the law passes the bounds of reason. Speaking generally of the shop and office employees as a class, they are in less danger from the negligence of co-employees, and perform duties less directly and vitally connected with the public safety, than train employees and track repairers, who constitute a very large percentage of the other class, and we cannot say that the differences are not such as would justify a reasonable mind in concluding that they suggest the propriety of substantial difference in legislative treatment.

We deem it unnecessary to again discuss any other objections made to the law. We are content to leave all other objections as they were left by the former discussion.

*By the Court.*—Judgment affirmed.

MARSHALL, J. I must concur in the result of this case but solely upon the ground that the court is bound by its former decision, from which I dissented.

It is understood that the case was presented anew, primarily, for the purpose of obtaining a final judgment, supported by an opinion, making unmistakable the precise grounds for the court's position, to the end that such grounds may clearly appear on review in the federal supreme court. I must again call attention to the fact that the statement in the opinion of the court that in *Ditberner v. C., M. & St. P. R. Co.* 47 Wis. 138, 2 N. W. 69, a law similar to the one now involved, "was held not obnoxious to the constitutional provision prohibiting unequal and partial legislation on general subjects," is not warranted as it seems to me. If I can read the *Ditberner Case* understandingly, it did not pass on the question suggested. The court merely refused to approve, presently, what was said on such subject by the Iowa court in *Deppe v. C., R. I. & P. R. Co.* 36 Iowa, 52, and then grounded the decision on the reserved power to amend corporate charters. The court in this case did not base its de-

cision on that theory but took up and decided what the court, in the *Ditberner Case*, was pleased to characterize as covered by mere *obiter* remarks in the Iowa case. I assume that the court felt impelled to do that because the basis for the decision in the *Ditberner Case* was wholly illegitimate, the law applying, as it did by its terms, to all corporations doing business in this state; those subject to the reserved power to amend corporate charters and those in respect to which such power could have no application. The legislature did not, in enacting the law, then consider, or in enacting the law now involved, have any thought of, amending corporate charters. Both laws are mere police regulations.

I must also again call attention to the fact that the doctrine of the Iowa case, proclaimed in the opinion in the *Ditberner Case* to be merely *obiter* and said in the court's opinion in this case to have been rejected in the *Ditberner Case*, was in fact the very one upon which the Iowa case turned as stated in my former opinion, while it was not involved at all, as the court viewed the matter, in the *Ditberner Case*.

Again, so far is the doctrine of the Iowa case from being *obiter*, that it was followed subsequently by the Iowa court as having been the basis for the decision in the case where it was first declared, and so far is it from being out of harmony with *Mo. Pac. R. Co. v. Mackey*, 127 U. S. 205, 8 Sup. Ct. 1161; *Mo. Pac. R. Co. v. Haley*, 25 Kan. 35; and *Lavallee v. St. P., M. & M. R. Co.* 40 Minn. 249, 41 N. W. 974, and similar cases, that it will be found upon investigation that all tie to it as the only constitutional basis for upholding the law. The Iowa decision and the Minnesota decisions, confessed in the opinion of the court on the first appeal, and affirmed now, to condemn the law in question, and substantially every adjudication in this country, so far as I have been able to discover, tie back to the doctrine of the early Iowa case. It seems to me that I reduced that to a demonstration in my opinion upon the former appeal.

The language of the Iowa court is this, referring to the

law under consideration: "If it were to be considered as to apply to all persons in the employ of railroad corporations without regard to the nature of the service it would be a clear case of class legislation, hence would be unconstitutional," runs through all the decisions, state and national, as I read them, till we come to the decision in this case. There, it seems, for the first time it is held that classification and legislation to protect against the results of danger of personal injuries with regard to mere employers of the persons to be benefited, the special classification, at that, including many groups not incurring any extraordinary hazard at all by reason of the kind of their employment and excluding others who do, is legitimate. Can that stand the test of the federal constitution on any one of several points that might be mentioned? That is the question. I do not think so.

I cannot add to my analysis on the former appeal of the various adjudications showing that they all go back to and support the doctrine of *Deppe v. C., R. I. & P. R. Co., supra.* What is there said in that respect I find no reason to modify after an investigation of the subject, by anything said in *Employers' Liability Cases,* 207 U. S. 463, 28 Sup. Ct. 141. True, the federal supreme court there said, that if the act applied only to the District of Columbia and the territories, where the power of Congress to legislate is plenary; not dependent as to the subject in hand on the interstate commerce clause of the constitution, the act could not be questioned. But it should not be thought from that, it seems, that the validity of such an act as the one before us, if so restricted, could not be questioned.

The objectionable feature of the act of 1907 is not in the national act. Whereas the former arbitrarily classifies employers, giving all their employees special benefits, with the exception of one class, indicating, clearly, that the classification was not on the ground of extraordinary hazard of the employment, but on account of employment merely by a par-

ticular class of corporations, the latter restricted the benefits of the act to those employees who are engaged in the zone of extraordinary hazard. The one extends to all employees of any railway company, except those working in shops and offices, the other makes, as beneficiaries of the act, every employee of any common carrier of a specified class, or his personal representative for the benefit of his widow and children, etc., in case of any such employee being damaged as the result of "the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or works." Notwithstanding the general reference to co-employee negligence such reference is in such close connection with the latter part of the quoted language as to plainly suggest hazard of railroading instead of mere kind of employment as the basis of classification, when the whole is read in the light of *Deppe v. C., R. I. & P. R. Co., supra,* construing the Iowa act, which feature is not found plainly, if at all, in our act of 1907. The particular feature, it seems, is more prominent in the federal than in the Iowa act which has been the model for nearly all of the acts which have been reviewed by the courts. That the federal court did not intend to go further than the Iowa rule is apparent in the fact that, in the brief reference to the merits of the case in hand as to whether the law was constitutional, *Mo. Pac. R. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, was referred to as the test to be applied. The reference to that case, in effect, referred to and approved the Kansas case and also *Deppe v. C., R. I. & P. R. Co.,* which the Kansas court cited, holding that it was bound thereby since the law was adopted from Iowa with the Iowa construction. It further, in effect, cited with approval the Minnesota and other cases, all tying back to *Deppe v. C., R. I. & P. R. Co.,* as demonstrated, I think, in my former opinion.

*El Paso & N. E. R. Co. v. Gutierrez,* 215 U. S. 87, 30 Sup. Ct. 21, now cited by the court as having declared the law to be that which it was very broadly intimated it might be in the *Employers' Liability Cases,* goes no further than to convert such broad intimation into judicial declaration. That is, when rightly considered, as I think, that the doctrine of *Deppe v. C., R. I. & P. R. Co., supra,* which the court here rejects, is the proper test to be applied to our act of 1907.

So it seems we come back to the conclusion, as stated in my former opinion, that the doctrine of the Iowa and Minnesota cases, conceded to condemn the act of 1907, runs through all the adjudications, state and national, on the subject. The court ties its conclusions to a superstructure with the substructure removed, the former being delusive without being contemplated from the viewpoint of the latter, resulting in the position of this court, as it seems to me, being illogical and entirely novel in the jurisprudence of this country.

It is hoped that the plain statement of views contained in the various opinions in this case, will result in the real logic of *Mo. Pac. R. Co. v. Mackey, supra,* and the two recent federal cases to which I have referred, being made unmistakable to all. It seems to be conceded that if they go no further than *Deppe v. C., R. I. & P. R. Co.,* then the act in question is unconstitutional under several clauses of the national fundamental law, because, as said, to put "all persons in the employ of railroad corporations without regard to the nature of their service," in one general group, for the purpose of special protection against loss by reason of personal injuries received in the course of their employment "would be a clear case of class legislation, hence would be unconstitutional, and clearly so."