### HENRY J. CUMMINGS

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1904.*

1. APPEALS AND ERRORS—*constitutionality of a statute cannot be first questioned on appeal.* The question of the constitutionality of a statute cannot be raised for the first time in a court of review, but must have been called to the trial court's attention, ruled upon and an exception preserved to the ruling.

2. SAME—*party cannot complain of error in his favor.* One can not urge as error in a court of review the action of the trial court in holding as correct the propositions of law submitted by him.

3. GAME—*stockholder of shooting club corporation is not an "owner" of the club's real estate.* A stockholder in a corporation owning a tract of land used as a game preserve is not an "owner" of the land, within the meaning of the proviso to section 25 of the Game law, permitting owners of farm lands to hunt game on their lands without procuring a resident license.

4. SAME—*title to wild game is in the State.* The title to wild game is in the State, irrespective of the ownership of the land on which it may be found; and the State may prohibit or regulate the

killing of game, and may impose greater restrictions upon non-residents than upon residents.

5. SAME—*proviso to section 25 of the Game law construed.* The proviso to section 25 of the Game law of 1903 (Laws of 1903, p. 215,) was intended to permit owners of farm lands, residing in this State, and their children or tenants, to hunt game upon those lands, within the other limitations of the Game law, without procuring a resident license, and was not intended to extend that privilege to non-residents.

6. SAME—*proviso to section 32 of Game law of 1903 is invalid.* The proviso to section 32 of the Game law of 1903, which provides that nothing in the act shall apply to persons hunting on land of another person by invitation of the land owner, is invalid, being so repugnant to the body of the act that to uphold its validity would be destructive of the act itself.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. O. P. THOMPSON, Judge, presiding.

On October 22, 1903, plaintiff in error, Henry J. Cummings, was fined $25 by a justice of the peace of Greene county for hunting game with a gun without having a license, as prescribed by section 25 of chapter 61 of Hurd's Statutes of 1903. From this judgment he prayed an appeal to the circuit court, where the case was heard by the court without a jury, upon an agreed state of facts, which is substantially as follows:

"That the defendant, on the 21st day of October, 1903, before that day and ever since, has been and is a resident of the city of St. Louis, in the State of Missouri; that the defendant, on or about the 21st day of October, 1903, was hunting with a gun for game on the premises owned in fee simple in said county of Greene by the Grand Pass Shooting Club, a corporation organized and acting under the laws of the State of Illinois, and that said corporation has been so incorporated and acting as such corporation for several years past, and has been the owner in fee simple of about twelve hundred acres of land situated in the Illinois river bottom, in said Greene county, and that defendant, on the date above stated, did so hunt for game on said land, and at no other

place whatsoever; that the defendant, Henry J. Cummings, on the day when he was so hunting on said premises and for which this prosecution has been instituted, and for some time previous thereto, was a member of said corporation and a *bona fide* stockholder in said corporation; that said corporation, on the 12th day of September, 1903, adopted a resolution authorizing and inviting each member and stockholder of said corporation, at any time thereafter during the ensuing year, to visit said club and to hunt for game with a gun on the lands of said corporation above stated, and so situated in Greene county; that the said defendant, Henry J. Cummings, in company with one of the directors of said corporation, on the date above stated, was on said premises, in said Greene county, with said director on the above date stated, and with said director and by reason of the resolution referred to above, and by reason of being a member of said corporation and a stockholder thereof, on said premises with a gun, for the purpose of hunting, and was then and there so hunting. It is admitted that the Grand Pass Shooting Club is a corporation organized under the laws of the State of Illinois, and has been such corporation since August 27, 1887; that said corporation for several years last past, and up to this date, has been continuously, and is now, the owner in fee simple of about twelve hundred acres of land situated in the Illinois river bottom, in said Greene county, which it has enclosed and on which it has erected a club house and other improvements; that the said corporation, in September, 1903, as such corporation, adopted a resolution of record inviting all the members and stockholders of the said corporation to hunt, at any time thereafter during the ensuing year, with a gun, for game, during the proper season, on the said premises of the said corporation, in said Greene county; that the said defendant, Henry J. Cummings, did so hunt with a gun on the said premises on the date claimed by the People, that is to say, within eighteen months past, for game on said premises and by reason of the resolution adopted by said corporation, as above stated; that the said

Henry J. Cummings, at said time last named, had not pro-
cured from the proper authorities of the State of Illinois a
license to hunt, pursue or kill with a gun any of the wild
animals, fowl or birds that were then protected by the laws
of the State of Illinois."

Upon the submission of the case on the above state of
facts, no other evidence being offered by either party, the
defendant submitted to the court the five following proposi-
tions of law, which he asked to have held as the law appli-
cable to the case:

1. "That the proviso to section 25 of the act for the
protection of game, etc., in force July 1, 1903, is valid and
binding.

2. "That the proviso to section 32 of the same act is
also valid and binding.

3. "That the defendant, Henry J. Cummings, being a
member and stockholder of the Grand Pass Shooting Club,
had a right to hunt with a gun on the premises owned by the
said Grand Pass Shooting Club, and violated no law in so
doing at the time alleged in the complaint.

4. "That the defendant, Henry J. Cummings, being a
member and a stockholder of the Grand Pass Shooting
Club, and being invited by the resolution of said corporation
to hunt on the premises owned by the said corporation, in
said Greene county, with a gun, for game on the lands of
said corporation, in said Greene county, and having so hunted
on said lands within proper season by such invitation, is not
guilty of the charge alleged against him in this cause.

5. "That under the evidence in this case the defend-
ant, Henry J. Cummings, is not guilty of the charge alleged
against him in the complaint in this cause."

The court marked the first proposition held and the oth-
ers refused, and found the defendant guilty as charged in the
complaint. He entered his motions for a new trial and in
arrest of judgment, but both motions were overruled, and
thereupon the court rendered judgment against him for a
fine and costs, to which he then and there excepted.

MARK MEYERSTEIN, (GEORGE W. LUBKE, and J. D. JOHNSON, of counsel,) for plaintiff in error:

Section 25 of "An act for the protection of game, wild fowl and birds, and to repeal certain acts relating thereto," approved April 28, 1903, in force July 1, 1903, discriminates against non-residents of the State by fixing the license fee per annum to be paid by them at $15 while the fee to be paid by residents of the State is fixed by the section at one dollar. And there is a further discrimination against non-resident owners of lands in Illinois by the proviso to this section, which exempts the owners of farm lands, their children or tenants, from procuring resident's license to entitle them to hunt and kill game on the farm lands of which they are the *bona fide* owners or tenants, during the season when it is lawful to kill game. Because of these discriminations this section conflicts with section 2 of article 4 and section 1 of the fourteenth amendment of the Federal constitution.

License charges must be uniform as to citizens of the different States. *Ward* v. *Maryland,* 79 U. S. 418; *Welton* v. *Missouri,* 91 id. 275; *Weber* v. *Virginia,* 103 id. 344; *Walling* v. *Michigan,* 116 id. 446; *Robbins* v. *Shelby County,* 120 id. 489; *Caldwell* v. *North Carolina,* 187 id. 622.

All discriminations against the property and persons of non-residents are void. Cooley's Const. Lim. (7th ed.) 568-574; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Bowman* v. *Railroad Co.* 125 id. 465; *Voigt* v.*Wright,* 141 id. 62; *Brimmer* v. *Rebman,* 138 id. 78; *Connolly* v. *Sewer Pipe Co.* 184 id. 539.

Although the legal title to all wild animals is in the State while they are within its boundaries, every land owner, as between him and other land owners, has a qualified *ratione soli* in such of these animals as may be upon his land. And this qualified property will be protected to the particular land owner by actions in trespass, trover or other suitable remedy. And he has the right also to license other persons to make use of this qualified property right. *Blades* v. *Higgs,* 11 H. L.

631; *Sutton* v. *Moody,* 1 Raym. 250; *Lord Lonsdale* v. *Rigg,* 11 Exch. 654; *Goff* v. *Kilts,* 15 Wend. 550; *Ferguson* v. *Miller,* 1 Cow. 244; *Idol* v. *Jones,* 2 Dev. 162; *Glenn* v. *Keyes,* 1 Ill. App. 479; *Ulery* v. *Jones,* 81 Ill. 403.

The defendant, as a stockholder and member of the Grand Pass Shooting Club, had the right, upon the invitation of the club and in company with one of its directors, to hunt upon the lands owned by the club, October 21, 1903, in the open season for hunting, without his having first obtained a non-resident's license, as prescribed by section 25, *supra,* because the proviso to section 32 of the same act declares that "nothing in this act contained shall apply to persons hunting on the land of another person by invitation of such land owner," and which said proviso expressly exempted defendant from the license. Effect should be given this language because of the rule which requires effect to be given to all the words in a statute rather than that any should perish; and this being a criminal proceeding, the interpretation should be liberal to defendant. *St. Louis* v. *Lane,* 110 Mo. 254; Rutherford's Institutes, (2d Am. ed.) 421; Sutherland on Construction of Statutes, sec. 227.

Where there are two provisions, one of which is general and another particular, the particular provision must prevail and must be taken as an exception to the general provision. *Dahnke* v. *People,* 168 Ill. 102; *People* v. *Kipley,* 171 id. 44.

There is not an irreconcilable repugnancy between this proviso and the body of the act. To render a proviso to a statute invalid it must be so directly repugnant to the purview and body of the act that it cannot be harmonized or reconciled with it or its substantial parts. Here the principle object of the act—the protection and preservation of game—can be accomplished, notwithstanding the restriction of the proviso, by extending to persons hunting on the land of another by invitation, the same right to hunt and kill game, without procuring a license, "during the season when it is lawful to kill game," which section 25 of the act gives to the owners of farm lands, their children and tenants. Endlich on

Interpretation of Statutes, sec. 185, p. 256; *Dugan* v. *Bridge Co.* 27 Pa. St. 303; *Mason* v. *Boom Co.* 3 Wall. 252; *Commercial Ass.* v. *MacKenzie,* 85 Md. 132; *In the matter of Swigert,* 119 Ill. 83; *Church of Holy Trinity* v. *United States,* 143 U. S. 457.

The office of a proviso generally is, either to except something from the enacting clause, to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of its extending to cases not intended to be included. *Huddleston* v. *Francis,* 124 Ill. 195.

H. J. HAMLIN, Attorney General, E. W. PAINTER, State's Attorney, and GEORGE B. GILLESPIE, for the People:

Private persons have no absolute and unqualified right to hunt or kill game or to catch fish, but only a privilege granted by the sovereign power of the State, either expressly or impliedly; and it follows that nothing is taken from them when denied the privilege, at stated seasons, of capturing or killing game or fish. In any view, the question of individual enjoyment is one of public policy, and not of private right. *American Express Co.* v. *People,* 133 Ill. 649; *Magner* v. *People,* 97 id. 320; *People* v. *Bridges,* 142 id. 31; *Merritt* v. *People,* 169 id. 219.

The ownership of wild animals, wild fowl and birds being in the people of the State in trust for all its citizens, and no one having a property right in them to be affected, it results that the legislature, as the representative of the people, may withhold or grant to individuals the right to hunt or kill game or qualify and restrict it to certain times of the year, as it may consider will best subserve the public welfare. *Magner* v. *People,* 97 Ill. 320; *Geer* v. *Connecticut,* 161 U. S. 519.

The title to game being and remaining in the State even after it is separated from the common stock by killing or taking the same into possession, the individual can have no property right therein of which he could be deprived, nor could he, if a citizen of a foreign State, be discriminated

against with respect to such property right and not allowed the equal protection of the law so far as such property is concerned. His right to take game is a mere privilege, granted under such restrictions as the State may elect to impose. *People* v. *Bridges,* 142 Ill. 30; *Magner* v. *People,* 97 id. 321; *Merritt* v. *People,* 169 id. 219.

A game law is not invalid because it provides greater restrictions and severer penalties against non-residents than against residents. *Allen* v. *Wyckoff,* 48 N. J. L. 90.

The sovereign ownership of animals *feræ naturæ* is in the State in trust for the benefit of its citizens, and a statute requiring the payment of a license by a non-resident is a police regulation within the power of the State, and not in violation of section 2 of article 4 of the Federal constitution or of section 1 of the fourteenth amendment, although such fee is not required of residents of the State; nor is the validity of such regulation as to a particular individual who is a non-resident of the State affected by the fact that he is a stockholder in a corporation in the State which owns lands maintained as a game preserve. *In re Eberle,* 98 Fed. Rep. 295.

A law which discriminates against the citizens of foreign States and to some extent interferes with commerce between States, if the regulation is one within the police power and deals directly with the common property of the State, does not conflict with the commerce clause of the Federal constitution. *McCready* v. *Virginia,* 94 U. S. 397.

A stockholder in a corporation is not the owner of the property of the corporation, but merely the owner of stock in the corporation, in the proportion that the stock held by him bears to the total corporate stock. The property of the corporation belongs to the legal entity,—the corporate body, —and is in no sense the property of the stockholders. The stockholders of the corporation are not partners, even as between themselves, nor are they co-tenants of real estate owned by the corporation. *Baker* v. *Backus,* 32 Ill. 83; *Russell* v. *McLellin,* 14 Pick. 63; *Dyckman* v. *Valiente,* 43 Barb. 131; *Pratt* v. *Bacon,* 10 Pick. 123.

The ownership of stock in a game preserve in Illinois does not constitute the owner a landholder in the State of Illinois. Even if the plaintiff in error, by virtue of being a land owner, would be exempt from prosecution under the provision of section 25, he is not in a position to claim that exemption by being merely the holder of stock in a corporation which owns land in Illinois; and the statute does not discriminate against him as a non-resident land owner, for the reason that the ownership of stock in the Grand Pass Shooting Club does not constitute him a land owner. *In re Eberle,* 98 Fed. Rep. 295.

A proviso which is repugnant to the body of an act or its general purview is itself void and can be given no effect. Endlich on Interpretation of Statutes, sec. 185; *Mason* v. *Boom Co.* 3 Wall. 252; *Donegan* v. *Bridge Co.* 27 Pa. St. 303; *Ex parte Mayor's Court,* 4 Clark, 315; *Penick* v. *High Shoals Manf. Co.* 113 Ga. 592.

The proviso to section 32 of the Game law of 1903, providing "that nothing in this act contained shall apply to persons hunting on the land of another person by invitation of such land owner," is void.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Section 25 of chapter 61 provides as follows: "For the purpose of increasing the game protection, * * * no person or persons shall at any time hunt, pursue or kill with gun any of the wild animals, fowl or birds that are protected during any part of the year, without first having procured a license so to do, and then only during the respective periods of the year when it shall be lawful. Said license shall be procured in the following manner: * * * And said applicant, if a non-resident, shall pay to the county clerk the sum of $15, together with the sum of fifty cents as the fee of the county clerk, and, if a resident, shall pay to the clerk of any city, town or county the sum of one dollar as a license fee, together with the sum of ten cents as the fee of the city, town

or county clerk for issuing such license: * * * *Provided,* that the owner or owners of farm lands their children or tenants shall have the right to hunt and kill game on the farm lands of which he or they are the *bona fide* owners or tenants, * * * without procuring such resident license."

As shown by the foregoing statement, the court below held said section valid at the request of the defendant, but it is now attempted to be maintained by his counsel that it is unconstitutional and void,—first, because it is in conflict with section 2 of article 4 of the Federal constitution, which declares that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," this section of the statute providing for a different fee to be paid by non-residents from the fee charged to residents; second, because it is in conflict with section 1 of the fourteenth amendment to the Federal constitution, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; third, because it infringes upon the exclusive power of Congress, under section 8 of article 1 of the Federal constitution, to regulate commerce among the several States.

An examination of these several objections to the validity of the statute will lead to the conclusion that neither of them can be sustained, and we are clearly of the opinion that the trial court ruled properly in holding the statute valid. Upon this record, however, that question is not before us for decision. That a party to a suit cannot ask the trial court to hold a proposition of law applicable to his case and then assign for error such holding is too clear for argument. The validity of section 25 was not questioned upon the trial by proper propositions of law, and it cannot, therefore, be questioned here. (*Mechanics' Savings Ass.* v. *People,* 184 Ill. 129; *People* v. *McCoy,* 132 id. 138; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Ottawa,* 165 id. 207;

*Farwell & Co.* v. *Shove,* 105 id. 61; *Chiniquy* v. *People,* 78 id. 570; *New York Life Ins. Co.* v. *People,* 195 id. 430; *Board of Supervisors* v. *Commissioners of Highways,* 164 id. 574.) No attempt was made to question its validity, even in the motion for a new trial, which was based on the three grounds: First, that the court erred in holding the proviso to section 32 valid; and second and third, the finding of the court was contrary to the evidence and the law. And the same may be said of the motion in arrest of judgment. The attempt, therefore, is to raise the question for the first time in this court,—and that, too, in the face of the holding of the trial court, on the defendant's own request, that the statute is valid. It is fundamental that the question of the constitutionality of a statute cannot properly be raised for the first time in a court of review, but must have been called to the attention of the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such ruling. (*Mechanics' Savings Ass.* v. *People, supra; People* v. *McCoy, supra; Chicago, Burlington and Quincy Railroad Co.* v. *City of Ottawa, supra.*) It would be a travesty upon justice to hold otherwise, and permit a party, after procuring the court to hold a proposition in his favor, to assign error upon that ruling. And again, it is a rule of universal application that the reversal of a judgment cannot be urged upon a ground not submitted to the trial court, and upon which it did not and was not asked to decide.

The next ground of reversal is, that the decision of the court below was contrary to the law and the evidence, for the reason that the defendant, being an owner of stock in the Grand Pass Shooting Club, was an owner of real estate belonging to that corporation, and by virtue of such ownership acquired an equitable title to the game on the land of the corporation, which he had a right to take independently of the provisions of the statute. The proviso to section 25, as shown above, is, "that the owner or owners of farm lands their children or tenants shall have the right to hunt and

kill game on the farm lands of which he or they are the *bona fide* owners or tenants, during the season when it is lawful to kill game, without procuring such resident license." This provision having been held valid with the other parts of section 25, the defendant could only avail himself of the exception by bringing himself within its limitations, and this he failed to do for several reasons. First, being a stockholder in the corporation gave him no right, title or interest in the real estate owned by the corporation. "A share of stock may be defined as a right which its owner has in the management, profits and ultimate assets of the corporation." (Cook on the Law of Stock and Stockholders, sec. 5.) "With reference more particularly to the essential nature of shares of stock, it has been well settled that such property is personalty, and not realty. It is said that a share of stock is not real estate; has nothing to give it the character of real estate; is not land, nor a hereditament, nor an interest in either of them." (Ibid. sec. 6.) "It is now a well established principle that the shares of the capital stock of corporations are personal property. And this applies equally to all corporations, including those whose property consists of real estate, although attempts were formerly made to give to the stock of those companies the character of an interest in real estate. Sales of stock are therefore excluded from the provisions of the Statute of Frauds regulating conveyances of real estate or interests in real estate." (Beach on Private Corporations, sec. 612.) "A stockholder has no legal title to the corporation property, or to any separate part thereof, until a division is made on the winding up or dissolution of the corporation, and prior to that time he has no right to take any of the corporate property for his own purpose." (26 Am. & Eng. Ency. of Law,—2d ed.—p. 946.) The assets of a private corporation, whether consisting of real estate or personal property, belong to the corporate body, and the stockholders are not in any sense the owners thereof. We think this proposition so well established that the citation of authorities in support of it is unnecessary.

The language of the court in *In re Eberle,* 98 Fed. Rep. 197, is applicable to the present case. There the defendant was arrested for hunting in a preserve in Henderson county, this State, and brought *habeas corpus* proceedings in the United States District Court for the Northern District of Illinois. The land upon which he was charged with hunting was owned by a corporation in which he held stock, as the defendant did in the case at bar. There the defendant was a non-resident, and contended that, being an owner of land in Illinois, he could not be put on a different footing from residents, and that the attempt to discriminate against him deprived him of the equal protection of the law. The court, in the decision of the case, said: "In his petition he states that he is a member of and stockholder in an Illinois corporation, which corporation is the owner of land on which he was hunting at the time it is alleged he violated the statute. Without, therefore, determining whether a non-resident land owner would be relieved from the provisions of the statute in question when shooting wild game upon his own premises, I deny the petition on the ground that the allegations thereof do not entitle the petitioner to the relief prayed. * * * The sovereign ownership of wild game is in the State, in trust for the benefit of its citizens, and a statute requiring the payment of a license by a non-resident for the privilege of hunting such game within the State is a police regulation within the power of the State, and not in violation of article 4, section 2, of the Federal constitution, or of section 1 of the fourteenth amendment, although said fee is not required of residents of the State." We concur in the reasoning and conclusion thus announced.

In the next place, it does not appear that the lands upon which the defendant was charged with hunting without a license were farm lands, but, on the contrary, the agreed statement of facts tends to show that the twelve hundred acres owned by the shooting club were a game reservation owned and used by it as such. It will be seen that the proviso above quoted permits the *bona fide* owners of farm lands,

or their tenants, during the season, etc., to hunt on the same "without procuring such *resident* license." The title to wild game is in the State, without reference to the ownership of the lands upon which it may be found, and the State has the undoubted right, therefore, to protect and prohibit or regulate the taking or killing of the same. "And a game law is not invalid because it provides greater restrictions and severer penalties against non-residents than against residents." (*Allen* v. *Wyckoff*, 48 N. J. L. 90.) The manifest intention of the legislature in adopting the proviso to section 25 was to permit the owners of farm lands residing in this State, and their children or tenants, to hunt upon those lands, within the other limitations of the statute, without obtaining a resident license so to do, and not to extend that privilege to residents of other States or countries.

It is again insisted, that even though section 25 is valid and the plaintiff in error does not come within its proviso as an owner, still the court below erred in refusing to hold that section 32 was valid, and that under the proviso thereto the defendant should have been acquitted. That section provides for the repeal of laws previously passed for the protection of game, and the last clause is as follows : *"Provided,* that nothing in this act contained shall apply to persons hunting on the land of another person by invitation of such land owner." The circuit court held this provision invalid, and the defendant preserved exceptions to such holding. The question for our decision on this branch of the case is whether such exception or proviso is so repugnant to the balance of the act as to be invalid.

It is a well settled principle of law that an act of the legislature shall be construed, if possible, so as to give effect to the intention of the law-makers, which intention must be ascertained from the language of the act itself, if it be possible to do so, and if it consists of several sections, they must be considered and construed together in order to arrive at such intention. By section 25 it was the manifest purpose of the legislature to require persons residing out of this

State, owning land here, to obtain a non-resident license to hunt or take game on such land, and it certainly was not the intention to require an owner of farm land who was a non-resident of the State to pay a license fee of $15 for hunting upon his own land, and at the same time permit him to authorize others, by mere invitation, to do so without a license. But that proviso is not limited to section 25. It is general, and applies to every section in the act which contains anything in conflict with it. If valid, so construed, a person would be authorized to hunt at any season of the year, in any manner, without limit as to the amount of game killed or taken, if, forsooth, the owner of the land on which he hunted had invited him to do so. To give it that construction would lead to a defenseless incongruity.

It is a well known rule applicable to the construction of statutes, that a saving clause must be rejected when it is directly repugnant to the purview or body of the act and cannot stand without rendering the act inconsistent and destructive of itself. (1 Kent's Com. 522; 26 Am. & Eng. Ency. of Law,—2d ed.—681.) We are of opinion that the last clause of section 32, which expressly exempts persons who are hunting on the land of another by invitation of such land owner, from taking out a license, literally construed, is so repugnant to the balance of the statute as to render all of the statute ineffective, and as this was manifestly not the intention of the legislature the clause must be held invalid, except in so far as it can be given a limited effect. The purpose of the legislature doubtless was to authorize the owner of lands to invite another person to do that which he might himself lawfully do, and so construed the proviso can be sustained, but as applicable to the facts of this case the court was clearly right in holding it invalid.

We find no reversible error in this record, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*