CHARLES MICHELSON, Appellant, *vs.* THE JUDSON FREIGHT FORWARDING COMPANY *et al.*—(THE UNION PACIFIC RAILROAD COMPANY, Appellee.)

*Opinion filed June 24, 1915.*

1. CARRIERS—*inter-State shipment is governed by Inter-State Commerce act.* The provisions of the Inter-State Commerce act, including the Carmack amendment, apply to all inter-State shipments, and they apply, so far as the liability of the initial carrier for any loss on the goods is concerned, whether the initial carrier issues a through bill of lading or one merely to the terminus of its own line.

2. SAME—*Inter-State Commerce act has superseded all State laws on the subject.* The Inter-State Commerce act, with its amendment fixing the liability of carriers of inter-State shipments, was intended to cover the full field of inter-State shipments, and its effect is to supersede all State laws on the subject.

3. SAME—*limitation of liability in consideration of lower rate is not prohibited.* A provision in a bill of lading for an inter-

State shipment restricting the amount recoverable by the shipper to a certain sum per hundred pounds in consideration of the payment of a lower tariff rate than would otherwise apply, is not such a restriction of liability as is prohibited by the Carmack amendment to the Inter-State Commerce act.

4. SAME—*effect where published tariff rate is based on valuation of goods.* Where the published tariff rate for an inter-State shipment is based upon a certain valuation of the goods carried, and such valuation is placed upon the goods by the shipper for the purpose of obtaining such rate, the recovery in case of loss of the goods is limited to the valuation given, irrespective of the bill of lading or contract limiting the carrier's liability.

5. APPEALS AND ERRORS—*a party is not entitled to complain of error he has invited.* A party is not entitled to urge as error in a court of review the action of the trial court in holding as correct the propositions of law submitted by him.

APPEAL from the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding.

ROY D. KEEHN, (EDWARD G. WOODS, of counsel,) for appellant.

JOHN A. SHEEAN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant, Charles Michelson, commenced suit in the municipal court of Chicago against the Judson Freight Forwarding Company, the Southern Pacific Railroad Company and the Union Pacific Railroad Company to recover for the loss of certain goods and household effects owned by him and which had been shipped from Oakland, California, to Chicago, Illinois, and which were destroyed by fire in transit at Sidney, Nebraska, being transported by the Union Pacific Railroad Company. Afterwards, by stipulation, the Judson Freight Forwarding Company and the Southern Pacific Railroad Company were dismissed as defendants and

an amended statement of claim was filed against the Union Pacific Railroad Company as sole defendant. The amended statement of claim on which the case was tried charged that the defendant, the Union Pacific Railroad Company, in the month of October, 1907, in the city of Ogden, State of Utah, agreed for a consideration to safely transport certain goods of the plaintiff, (specifically naming them,) including certain valuable paintings, from the city of Ogden, in the State of Utah, to the city of Chicago, in the State of Illinois, and there deliver the same to plaintiff, and received said goods for such purpose; that, not regarding its promise, said defendant did not take care of said goods or safely carry and deliver the same to the plaintiff, but, on the contrary thereof, has utterly refused and neglected so to do, by reason whereof said goods became lost to the plaintiff, to the damage of the plaintiff, etc.

The amended affidavit of merits of the defendant, the Union Pacific Railroad Company, denied the agreement to transport the goods of the plaintiff from the city of Ogden to the city of Chicago and safely deliver the same to the plaintiff or his agent, but admitted receiving, at the time alleged, from the Southern Pacific Railroad Company, a carload of goods which was being transported under a written contract, (the receipt or bill of lading issued by the Southern Pacific Railroad Company, which will be hereinafter referred to,) and that defendant depends upon each and every clause thereof for its defense to this action. Defendant admitted the goods were destroyed but denied that such loss occurred by reason of any neglect or failure of duty on its part. Defendant averred that the plaintiff is estopped from denying that the consignor of the goods, the Judson Freight Forwarding Company, was the duly authorized agent of the plaintiff for the purpose of contracting with the defendant for the transportation of the goods in question and from denying that the contract (the bill of lading above referred to) is binding upon him, and is further

estopped from denying that the Stringer Storage Company and Mrs. C. Michelson were the plaintiff's agents for the purpose of authorizing the Judson Freight Forwarding Company to ship the goods under such contract, for the reason that Mrs. Michelson was in sole possession of said goods at the time they were delivered to the Judson Freight Forwarding Company for the shipment thereof and the Judson Freight Forwarding Company was clothed with authority to ship the goods under such contract, and neither the defendant nor the Southern Pacific Railroad Company was apprised, at the time of the shipment, of any restriction of authority on the part of the Judson Freight Forwarding Company to enter into the contract referred to. Defendant further alleged that if the plaintiff was the owner of the goods he is estopped from claiming that at the time of their loss they were of any greater value than $361.25, for the reason that neither the Southern Pacific Railroad Company nor any of its connecting lines were advised that the value of the goods was more than that sum, and the Judson Freight Forwarding Company represented the value of the goods to be $361.25 and no more, which said sum was the amount agreed upon as the value of said shipment by the carrier and shipper, and had it not been for the representation that the value of the goods was only $361.25 the defendant would have charged a higher rate for the transportation of the goods in question. It is further alleged that at the time of shipment the goods in question were delivered to the Southern Pacific Railroad Company and that company was not notified that the consignment contained valuable paintings or pictures, as set forth in plaintiff's claim, and if the value claimed had been then stated to the Southern Pacific Railroad Company, the said paintings and pictures would not have been accepted as freight on account of their great value, and on account of these facts plaintiff is estopped from claiming a value over

and above that actually represented to the Southern Pacific Railroad Company at the time of receiving the pictures. It is further denied that said goods were of the value claimed, and it is alleged that the owner of the said goods collected from the Commercial Union Assurance Company the sum of $1638.75, and has not given to the defendant the benefit of any insurance effected by or on account of said freight.

The case having come on for hearing, a jury was waived and the plaintiff moved the court to strike from the files that portion of the defendant's amended affidavit of merits which set up as a defense a bill of lading or contract existing between the Judson Freight Forwarding Company and the Southern Pacific Railroad Company, and to strike from the amended affidavit of merits all allegations in regard to insurance, which motion was taken under advisement by the court and subsequently allowed. Certain propositions of law were submitted by the defendant and refused, and the court made the following statement: "For the information of the Appellate Court the trial court states that the principal reason for refusing the propositions of law aforesaid tendered was that the trial court does not regard the contract offered by the defendant in evidence as a contract of through shipment, but only a contract to carry from Oakland, California, to Ogden, Utah." Thereupon the court returned a finding in favor of the plaintiff and against the defendant, the Union Pacific Railroad Company, for the sum of $7786.50, the full value of the goods as proven on the trial, and entered judgment thereon. Defendant prayed an appeal to the Appellate Court for the First District, which court reversed the judgment of the municipal court and gave judgment against said defendant, the Union Pacific Railroad Company, for $361.25, being the valuation declared in the bill of lading at $5 per hundred pounds, the total weight being 7225 pounds. A certificate of importance was granted to the plaintiff in the court below by

the Appellate Court and the case has been brought to this court by appeal.

Appellant assigns as error the action of the Appellate Court in reversing the judgment of the municipal court. The appellee has assigned as cross-error that the Appellate Court erred in holding that in submitting the eighth proposition of law in the trial court the appellee expressly invited a finding that it could not rely upon the validity of the insurance clause contained in the bill of lading under which the shipment involved in the litigation moved, and that because of this fact the questions as to whether the provision in the bill of lading containing the insurance clause was enforcible by the initial carrier, and as to whether such provision inured to the benefit of the Union Pacific Railroad Company, were not involved upon the record made in the lower court, and that the Appellate Court erred in entering any judgment against the Union Pacific Railroad Company.

The facts of the case as they appear from the evidence are as follows: The plaintiff, who was the owner of the goods, left San Francisco in October, 1907. His wife, who remained behind, engaged the services of the Stringer Storage Company of San Francisco to pack and ship the goods in question. The manager of the Stringer Storage Company (Sam Brogden) advised her, as he testified, that she could get a lower rate by shipping the goods through the Judson Freight Forwarding Company, which was engaged in the business of forwarding such shipments and made up different consignments of through freight into car-load lots and in that way obtained a lower rate. As a result of this conversation employees of the Stringer Storage Company packed the goods and sent them to the warehouse of the Judson Freight Forwarding Company. Brogden, at the request of Mrs. Michelson, as he claims, also took out insurance to the amount of $2000 on these goods in the name of Mrs. Michelson. Upon the delivery of the goods to the

Judson Freight Forwarding Company the Stringer Storage Company executed a shipping order and release, as follows:

"*To agent Judson Freight Forwarding Co., San Fran., Cal.*

"Please forward lot of household goods consigned and marked: To C. Michelson, .......... street, c/o New York American station, New York, N. Y.

"In consideration of the reduced rate made for the shipment of my household goods it is understood and agreed that Judson Freight Forwarding Co. acts only as agents for the shipper, and is not responsible for damage or loss beyond the amount which may be collected from the railroad companies over whose lines said goods are forwarded. Desiring to receive the benefit of the reduced rate, I assume all risk of breaking or chafing, and release goods to the value of $5 per cwt. in case of loss or damage, and subject to other printed conditions of Judson Freight Forwarding Co.'s freight receipt and regular bill of lading issued by the railroad company *via* whose lines goods are forwarded. It is further expressly agreed that Judson Freight Forwarding Co. will not be responsible for loss or damage of goods, by fire or otherwise, in excess of $5 per cwt. valuation, while in their care in warehouses awaiting shipment.

"Weight, 7225; rate, $2.75 per 100 pounds from San Fran., Cal., to New York City. Signed in duplicate.

STRINGER STORAGE CO.<br>Consignor or his (or her) agent,<br>SAM BROGDEN."

The Judson Freight Forwarding Company then gave to the Stringer Storage Company a receipt in form as follows:

"SAN FRANCISCO, CAL., 1907.

"Received from Stringer Storage Co. the following described freight, (contents and value unknown,) to be forwarded to nearest distributing point after receipt of same. This receipt is given and received with the express understanding that the goods herein described are all second-hand household goods and are subject to be shipped by the Judson Freight Forwarding Co. as part of a carload, and that said company, acting only as agents for shippers, is not responsible for damage or loss beyond the amount which may be collected from the railroad companies over whose lines the said goods are shipped.

"Consigned to C. Michelson; destination, New York City; street address, c/o New York American, *via* point of distribution, Chicago."

Then followed a description and designation of the several packages, cases and crates and their contents, and also

a clause as follows: "Released to valuation of $5 per cwt. and entirely at owner's risk."

The goods were then delivered by the Judson Freight Forwarding Company to the Southern Pacific Railroad Company and loaded in car No. 50,259, and the railroad company issued to the forwarding company its bill of lading therefor, dated October 1, 1907, signed by G. W. Fletcher, as agent, the material portions of which here involved being as follows: "Delivered to the Southern Pacific Company at Oakland the following described packages, in apparent good order, (contents and value unknown,) consigned as marked and numbered below, to be carried upon the conditions expressed herein to the company's freight station at Ogden and there delivered in like good order to the consignee or owner, or to order of said consignee or owner, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said goods or packages, it being distinctly stipulated that the responsibility of this company shall cease at the station where delivered to such person or carrier. It is further stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained, and said conditions are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable. * * * Routing: To enable it to guarantee through rates, the absolute and unqualified right of routing beyond its own terminal is reserved by the Southern Pacific Company. * * * Responsibility: The responsibility of this company and each succeeding carrier for loss or damage does not extend beyond its own line. * * * Adjustment of losses: Except when otherwise agreed, the value or cost of property at place and date of shipment is to govern settlement, and carrier is to have the benefit of any insurance effected by or on account of the owners of said freight. * * * Received the following

described packages, in apparent good order, (contents and value unknown,) consigned as marked and numbered below, to be transported, upon the conditions expressed herein, to the company's freight station at Ogden and there delivered in like good order to the consignee or owner, or to order of said consignee or owner, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said goods or packages, it being distinctly stipulated that the responsibility of this company shall cease at the station where delivered to such person or carrier. It is further stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained. * * * Rate of freight named above is guaranteed on this shipment for the transportation from Oakland to Chicago."

A release, signed by the Judson Freight Forwarding Company, was printed upon the bill of lading, as follows: "Desiring to receive the benefit of any lower rate provided for freight upon carriers being released, or at owner's risk, at a specified value of ........., in consideration of such lower rate being applied on the within shipment we hereby agree that none of said carriers is to be liable for any loss or damage of any kind, except such as may be caused by its gross negligence, and that the goods covered by this bill of lading are of the value of $5 per cwt., and that in no event is carrier to be liable for any loss of or damage to said goods, from any cause, in excess of the valuation above named."

The tariff rate on file with the Inter-State Commerce Commission for household goods in car-load lots between Oakland and Chicago, when released to a valuation of $5 per hundred pounds, was $1.12½ per hundred pounds with a 20,000 pound minimum, and the rate on the same goods in car-load lots between said points when not released to a valuation of $5 per hundred pounds was $1.75 per hun-

dred pounds. The rate on the same goods in less than car-load lots, under released valuation, was $3.40 per hundred pounds, and when the valuation was not released, $5.10 per hundred pounds. The freight charged and paid for the shipment in question between Oakland and Chicago was $1.12½ per hundred pounds. These tariff schedules were introduced in evidence.

It is the contention of appellee that as the shipment in question was from a point in one State to a point in another State, the provisions of the Inter-State Commerce act as amended and as said act has been construed by the Federal courts apply, and that the provisions of the bill of lading issued by the Southern Pacific Railroad Company to the Judson Freight Forwarding Company, acting as agent for the owner of the goods, fix the responsibility of the Southern Pacific Railroad Company as the initial carrier and inure to the benefit of all connecting carriers, including the appellee, the Union Pacific Railroad Company, and that the provisions of said bill of lading as to the valuation of the goods in case of loss and the amount which the owner was to receive by reason of any insurance effected by or on account of the owner of said freight also inure to the benefit of the initial and other carriers of such freight, including the appellee. The appellant contends that the bill of lading issued by the Southern Pacific Railroad Company merely provided for carrying the goods in question from Oakland, California, to Ogden, Utah; that it was not a through bill of lading, and that its provisions cannot be applied to the transportation of the goods beyond the destination named therein, which was Ogden, and that the subsequent carriage of the goods by appellee from Ogden to the place where they were destroyed was on an implied contract to safely transport and deliver these goods, and that appellee is therefore liable for the full value thereof.

Section 20 of the Inter-State Commerce act, as amended June 29, 1906, (34 U. S. Stat. at Large, 584, 595,) com-

monly known as the Carmack amendment, is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: *Provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law; that the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

This statute has been held by the Supreme Court of the United States to be constitutional. (*Atlantic Coast Line Railway Co.* v. *Riverside Mills,* 219 U. S. 186.) It has also been held in construing the act that almost every detail of the subject is covered, and there can be no doubt but that Congress intended by the act to take full possession of the subject of inter-State shipments, and that the effect of the act was to supersede all State laws and regulations on the subject. (*Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Gamble-Robinson Co.* v. *Union Pacific Railroad Co.* 262 Ill. 400.) In the case at bar the shipment in question was an inter-State shipment, and there can be no question but that it was governed by the provisions of the Inter-State Commerce act, including the Carmack amendment. It was

the duty of the initial carrier, the Southern Pacific Railroad
Company, to issue a receipt or bill of lading for the goods
in question, but whether it issued a bill of lading from Oak-
land to Chicago or not, the provisions of the act, so far as
the liability of the initial carrier for any loss of the goods
*en route* is concerned, would apply. *Gamble-Robinson Co.*
v. *Union Pacific Railroad Co. supra.*

In the case of *Kansas City Southern Railroad Co.* v.
*Carl,* 227 U. S. 639, it was held that a clause in the bill of
lading by which the shipper released the valuation of the
shipment to $5 per hundred pounds was valid and would
inure to the benefit of a connecting carrier. If the bill of
lading in the case at bar had provided for transporting the
goods in question from Oakland to Chicago there would be
no question but that the clause in the bill of lading fixing
the valuation of the goods at $5 per hundred pounds could
be availed of by the initial carrier, the Southern Pacific
Railroad Company, and also by the appellee, the Union Pa-
cific Railroad Company, as a connecting carrier, under the
holding in the *Carl case.* In that case it is said: "The lia-
bility of any carrier in the route over which the articles
were routed, for loss or damage, is that imposed by the act
as measured by the original contract of shipment, so far
as it is valid under the act." In construing the Carmack
amendment it has been held by the Supreme Court of the
United States that a provision in the bill of lading limiting
the amount recoverable, in case of loss, to $5 per hundred
pounds in consideration of the payment by the shipper of
a lower lawful tariff rate, does not constitute an exemption
from liability such as is forbidden by the Carmack amend-
ment. *Adams Express Co.* v. *Croninger, supra; Kansas
City Southern Railroad Co.* v. *Carl, supra; Great North-
ern Railway Co.* v. *O'Conner,* 232 U. S. 508.

It is very doubtful if the bill of lading in this case,
when read as an entirety, can be construed other than as a
through bill of lading. It provides that the goods should

be carried to the place of destination, and the consignee is the Judson Freight Forwarding Company, 319 Marquette street, Chicago, Illinois, and the destination is Chicago, Illinois. A through rate or freight charge of $1.12½ per hundred pounds was made, which was the rate made and published under the provisions of the Inter-State Commerce act for goods of a valuation of $5 per hundred pounds shipped in car-load lots.

In the case of *Boston and Maine Railroad Co.* v. *Hooker,* 233 U. S. 97, (58 L. ed. 868,) it was held that a regulation contained in the published tariffs of an inter-State railway carrier on file with the Inter-State Commerce Commission limiting baggage liability to $100 unless a greater value is declared and stipulated by the owner and the excess charges paid is binding upon the passenger in case of loss of the baggage through the carrier's negligence, regardless of the passenger's lack of knowledge of or assent to such regulation and regardless of the carrier's failure to inquire as to the value of the baggage or of its outward appearance as indicating greater value, any State law or policy to the contrary having been superseded when Congress, by the amendment of June 29, 1906, to the act to regulate commerce of February 4, 1887, took possession of the subject of the inter-State railway transportation of property. In that case it was said, quoting from *Adams Express Co.* v. *Croninger, supra:* "The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the commission."

In *Kansas City Southern Railroad Co.* v. *Carl, supra,* the court said: "The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost although it is not actually posted in the station. (*Texas and*

*Pacific Railroad Co.* v. *Mugg*, 202 U. S. 242; 50 L. ed.
1011; 26 Sup. Ct. Rep. 648; *Chicago and Alton Railroad
Co.* v. *Kirby*, 225 U. S. 155; 56 L. ed. 1033; 32 Sup. Ct.
Rep. 648.) It would open a wide door to fraud and de-
stroy the uniform operation of the published tariff rate
sheets. When there are two published rates, based upon
difference in value, the legal rate automatically attaches
itself to the declared or agreed value. Neither the inten-
tional nor accidental mis-statement of the applicable pub-
lished rate will bind the carrier or shipper. The lawful rate
is that which the carrier must exact and that which the
shipper must pay. * * * To the extent that such limi-
tations of liability are not forbidden by law they become,
when filed, a part of the rate." It was further stated in
the opinion in that case: "It is true that the Carmack
amendment requires a receipt or bill of lading to be issued
concerning shipments of property in inter-State commerce,
and that in the cases construing that amendment a bill of
lading was issued, and according to the circumstances of
the case, the bill of lading and its effect are discussed in
each of these, but the effect of filing the schedule is not
lost sight of, and the doctrine of the previous cases as to
the purpose of filing and the necessity of adherence to such
schedule is uniformly recognized." It was also said: "The
liability of a carrier under the Inter-State Commerce act
was said in the *Croninger case* to be, aside from the re-
sponsibility for the default of a connecting carrier, 'not
beyond the liability imposed by the common law, as that
body of law applicable to carriers has been interpreted by
this court as well as many courts of the States.' And in
that case it was laid down as the established rule of com-
mon law, 'as declared by this court in many cases, that such
a carrier may by a fair, open, just and reasonable agree-
ment limit the amount recoverable by a shipper in case of
loss or damage, to an agreed value made for the purpose

of obtaining the lower of two or more rates of charges proportioned to the amount of the risk.' "

From these decisions of the Supreme Court of the United States, which are controlling, it would seem that in inter-State shipments, irrespective of the bill of lading and whether the carrier has by proper bill of lading or lawful contract limited its liability to the shipper in case of loss, the published freight rate or tariff, when based on a valuation of the goods carried, binds the carrier, and the valuation placed on the goods by the shipper for the purpose of obtaining the rate published, limits a recovery to such valuation in case of loss.

The Appellate Court held that the bill of lading in question was a through bill of lading, and that the trial court erred in striking from the files that portion of appellee's amended affidavit of merits which set up as a defense such bill of lading, and in refusing to hold the sixth, ninth and twelfth propositions of law submitted by appellee in the municipal court. The sixth proposition of law is as follows:

"The court finds, as a proposition of law, that under the facts surrounding the shipment in question the plaintiff, Charles Michelson, is bound by the terms of the contract under which the said shipment originated, by virtue of the relationship of principal and agent existing between the said plaintiff, the Stringer Storage Company, the Judson Freight Forwarding Company and Mrs. Charles Michelson at and before the time that the goods in question were delivered to the Southern Pacific Company at San Francisco, California, to the same extent as if the said contract had been entered into personally by the said plaintiff himself."

Mrs. Michelson was not present at the trial in the municipal court, but it was admitted by the defendant in that court that if she were present she would testify that she did not give any directions to the manager of the Stringer Storage Company as to the manner in which the goods were to be shipped, and that nothing was said by him or

by her as to whether or not the shipment should be handled, in any respect, by the Judson Freight Forwarding Company. Appellant has made no argument on this proposition, and we cannot say that the Appellate Court erred in finding, from the evidence, that the Judson Freight Forwarding Company was, under the circumstances, the agent of appellant, as the owner of the goods, in making the rate and fixing the value it did.

The ninth proposition of law was to the effect that the restrictions and limitations contained in the contract under which the shipment in question originated, with reference to the limitation of liability, inure to the benefit of the Union Pacific Railroad Company. The twelfth proposition of law asked the court to find, as a matter of law, that the contract or bill of lading in question was a through contract or bill of lading from Oakland, California, to the point of ultimate destination. In any event, under the decisions of the Supreme Court of the United States, appellant could not recover more than the declared valuation of the goods, which was fixed at $5 per hundred pounds, for the purpose of fixing the carrying charges at $1.12½ per hundred pounds. If the act of the Judson Freight Forwarding Company was binding on the appellant in the matter of fixing the value of the goods as well as binding on appellee in the matter of fixing the freight rate, it is unnecessary to consider the ninth and twelfth propositions.

The eighth proposition of law was as follows:

"The court finds, as a proposition of law, that the clause in the contract under which the shipment originated, providing that the carriers should have the benefit of any insurance paid to the shipper on account of damages that might be sustained to the goods shipped, is valid under the laws of the State of Illinois, but the court finds that the defendant, Union Pacific Railroad Company, cannot rely upon its validity under the facts of this case."

.The Appellate Court held that appellee, by submitting this proposition of law to the trial court, expressly invited a finding that appellee could not rely upon the validity of the provision of the bill of lading as to the insurance, under the facts of this case. As this proposition of law is worded it would seem to be an invitation to the trial court to disregard any claim appellee might have because of the insurance on the property or as an abandonment of its claim in that regard. A party cannot urge as error in a court of review the action of the trial court in holding as correct the propositions of law submitted by him. *Cummings* v. *People,* 211 Ill. 392; *Palmer* v. *Meriden Britannia Co.* 188 id. 508.

For the reasons given, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*