# The People of the State of Illinois, Defendant in Error, v. Phil Ripplinger, Plaintiff in Error.

1. HIGHWAYS AND STREETS—*excuse for failure of motorist to stop after striking motor vehicle on highway.* In a prosecution under Cahill's St. ch. 95a, ¶ 42 (1) for defendant's failure after injuring a person on the highway, it is no defense that defendant was driving at such high speed that he did not see the injured person's car turn over or know she was injured.

2. HIGHWAYS AND STREETS—*what required of motorist injuring another on highway.* The proper construction of Cahill's St. ch. 95a, ¶ 42 (1) is that it is the duty of one injuring another while driving his vehicle on the highway to report his name, address and vehicle number to the injured party if the report can be made to the latter, or, if not, to the nearest police officer, or if none is present to the nearest police station or judicial officer; he may not report to any one of the four at his pleasure.

3. HIGHWAYS AND STREETS—*arrest as affecting duty of motorist causing injury to report name.* The arrest of defendant by police officers shortly after his car had caused another to turn over and injure its driver did not excuse him from the duty of reporting his name, address and automobile number to the injured person as required by Cahill's St. ch. 95a, ¶ 42 (1).

4. STATUTES—*construction to effect intent.* In construing statutes, the intention of the legislature is to be ascertained and given effect if possible, and if the statute is susceptible of more than one construction, it should be given the construction which will effect its purpose, rather than one which will defeat it.

5. INSTRUCTIONS—*when may properly be given in language of statute.* The court did not err in giving as an instruction in the trial of defendant for violating Cahill's St. ch. 95a, ¶ 42 (1) a copy of the statute, for though the evidence referred only to defendant's injuring a person, and the statute refers also to property damage, this provision is stated in the alternative.

Error by defendant to the County Court of St. Clair county; the Hon. W. R. WEBER, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed February 19, 1927.

A. A. HUNT and CLYDE D. MILLER, for plaintiff in error.

H. C. LINDAUER, State's Attorney, for defendant in error; CURT C. LINDAUER and JOHN T. THOMAS, Assistant State's Attorneys, of counsel.

MR. JUSTICE BOGGS delivered the opinion of the court.

On April 15, 1926, an information was filed in the county court of St. Clair county against plaintiff in error, charging him with driving "an automobile on a highway, knowing that an injury had been caused to a certain person, to wit, Elizabeth Vollmer, due to the negligence of the said Phil Ripplinger, and did then and there unlawfully, knowingly, willfully leave the place of said injury without stopping and give his name, residence, including city and street number, motor vehicle number, to the said Elizabeth Vollmer, or to any police officer, police station or judicial officer, contrary to the statute in such case made and provided." Cahill's St. ch. 95a, ¶ 42 (1).

A trial was had resulting in a verdict of guilty. The motion made by plaintiff in error for a new trial was overruled, and a sentence of six months in the county jail was imposed. To reverse said judgment, this writ of error is prosecuted.

It is first contended by counsel that the evidence fails to sustain the charge of knowledge on the part of plaintiff in error as to the injury to the said Elizabeth Vollmer.

The witness Elizabeth Vollmer testified: "I was going down on Broadway (East St. Louis) about twelve or fifteen miles an hour; he (plaintiff in error) came from the rear, hit my front wheel and of course that turned the machine around, and we went down the embankment; I don't know what happened then. * * * They took me to the hospital; my arm was broken."

Mrs. Anna Fisher, a witness on behalf of the People, testified that she and Mrs. Vollmer were driving "on

the right side, real slow; I don't know just when the car come; it come from the back and hit us on the side; heard nothing before and can't say that I saw any other automobile; I know they came and got us; that is all I know. I don't know what happened; we go down in the ditch."

John Wright, a police officer, testified: "I was driving west on Broadway, between Ninth and Tenth, and a Ford sedan drove by with two ladies in it, and a fellow passed us in a Nash roadster; he was making about thirty miles to forty and just did miss me, and he cut in and hit the front part of that Ford sedan, and the Ford went over the embankment; he didn't stop and I chased him about eight blocks and caught him at No. 15 Main street and arrested him. * * * We asked him why he didn't stop. He says, 'I didn't know I hit anything.' "

Robert Harrison, a police officer who was with Wright, testified: "We followed the lady's car about ten feet behind, when a car comes in behind us, so he ducked around us, and when he aimed to go by them the same as he went by us, I think it was his fender that hit the lady's front part of her car, and I think no man in the world who could have kept it from going down the dump. We figured this fellow, after he looked back at the car—we gave chase to this fellow." This witness also testified that he asked plaintiff in error, "Why didn't you stop when you knocked those people down the dump? He says, 'I didn't know if it hit.' That fellow was going fifty miles an hour."

Plaintiff in error testified, among other things: "It was raining light. I was in the car track going west, and this Ford car was also going west between the rail and the curb on the north side and she started to pass me and cut over in the car track in front of us, the front of her car struck me right in the middle, struck my right front fender; I just heard a little

bump, that is all. I kept on driving.   *   *   *   I never saw anyone go over. I looked around Broadway. They were driving up the same as I was." On cross-examination he testified: "I heard a little fender scrape, it sounded to me, just barely hit me. I looked around. They were driving the same direction I was; they followed me after they hit. I would say they were twenty feet behind about half a minute after the accident. I didn't know the officers were following me—I didn't know them."

The testimony of Martin Hendy tended to corroborate plaintiff in error's testimony to the effect that the car of Mrs. Vollmer turned towards and struck plaintiff in error's car. W. Holliday, a witness on behalf of plaintiff in error, testified: "The Ford sedan was driving near the curb; it seemed to me she was a little bit in front; she started to pull out in front of the Nash, and it seemed like when she saw she was about to hit this fellow she got excited and went toward the curb; she drove down the street about twenty or thirty feet; she hit the wire, went up on the curb and went over the sidewalk, and the car dropped over the embankment."

This, in substance, was the testimony in the case.

Counsel, in his argument to show lack of knowledge on the part of plaintiff in error as to any injury to Mrs. Vollmer, says:

"The Ford, then, if it went directly to the bottom, went some fifty feet, and if we take the witnesses for the People the defendant was dashing down Broadway at fifty miles an hour, and would then have been 200 feet or so away from the resting place of the Ford, and twenty feet higher. Therefore, he could not have seen her when she sustained the broken arm, which we assume happened when the Ford hit the bottom, as the testimony is that the only part of her machine struck was the front wheel from the side."

In other words, counsel takes the position that a party may drive down the street of a city at 50 miles an hour, strike an automobile driven by some one else, cause it to go over an embankment, falling some 15 to 20 feet, and then say that, because, at the speed at which he was driving, he had gone such a distance by the time the car reached the bottom of the embankment that he would be unable to see what happened, that therefore, under this statute, he could not be found guilty because the evidence would fail to prove that he actually knew of the injury. We are not willing to give this statute such construction. That construction should be given a statute which will give effect to the intention and object of the legislature in adopting the same. *Cummings v. People,* 211 Ill. 392-405; *City of Decatur. v. Schlick,* 269 Ill. 181-185. Courts will not adopt a construction which will lead to absurd consequences, unless the language of the statute will admit of no other construction. *Sturges v. City of Chicago,* 237 Ill. 46-51.

Plaintiff in error is bound by his testimony that he looked around after the collision, and the jury, in view of the testimony of the witnesses on behalf of the People as to what happened after the collision, were warranted in drawing the conclusion that plaintiff in error must have seen the car of Mrs. Vollmer go over the embankment, and must have known that under the circumstances she would be injured.

It is next contended by plaintiff in error that the proper construction of this statute allowed him to make report of said accident to any one of four places: "(1) The injured person, (2) a police officer, (3) the nearest police station, (4) a judicial officer."

We cannot adopt this construction. The statute makes it the duty of the person whose negligence has caused an injury to another, or to the property of another, to give his name, etc., to the injured person or to a police officer. If there be no police officer present,

or the report cannot be made to the injured person, then the report may be made to the nearest police station or judicial officer. In this case, the injured person was there at the place of the accident. If she was unconscious by reason of the accident, then there were two police officers in the immediate vicinity. It was therefore plaintiff in error's duty to make his report to either Mrs. Vollmer or the two police officers.

Counsel in his argument says that, the police officers having arrested him, it was not necessary to report to them, and as they took him to a police station, it must be assumed that they took him to the nearest police station and that a report was made there, and therefore there was no occasion for plaintiff in error making any report. That argument is not well founded.

In construing statutes, the intention of the legislature is to be ascertained and given effect if possible, and if the statute is susceptible of more than one construction, it should be given the construction which will effect its purpose, rather than one which will defeat it. *People v. Joyce,* 246 Ill. 124-130; *People v. Price,* 257 Ill. 587-593.

It is next insisted that the court erred in giving the first instruction given on behalf of the People. This instruction is a copy of the statute which was alleged to have been violated. No contention is made that the instruction would tend to mislead the jury because abstract in form, but the contention is that it refers to an injury to the person or to property, and that in this case the evidence is with reference to injury to the person alone.

This is not a valid objection to the instruction, as the statute is in the alternative. The court did not err in giving this instruction.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*